**TRITON COAL COMPANY, INC.,**
**Appellant (Plaintiff),**

v.

**MOBIL COAL PRODUCING, INC.,**
**Appellee (Defendant).**

No. 89–233.

Supreme Court of Wyoming.

Nov. 7, 1990.

Patrick R. Day, Holland & Hart, Cheyenne; Joseph W. Halpern, Holland & Hart, Denver, Colo., and Thomas A. Nicholas, III, Hirst & Applegate, Cheyenne, for appellant.

Stephen J. Sorensen, Richmond, Va., Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., and Thomas E. Lubnau, II, Lubnau & Lubnau, Gillette, for appellee.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The essential questions that must be resolved in this case relate to a claim of error for giving an instruction to which no formal objection was lodged at the appropriate time in the trial proceeding and to a claim of error for failure to give an instruction that was withdrawn. The issues are whether, in either instance, the appellant, Triton Coal Company, Inc. (Triton), developed a record that justifies this court in considering the claimed error or, in the alternative, whether the plain error doctrine permits this court to review the claims of error. Triton and Mobil Coal Producing, Inc. (Mobil), appellee, own and operate coal mines near Gillette, Wyoming. Triton, as the plaintiff, alleged that Mobil committed tortious interference with a contract between Triton and Western Farmers Electric Cooperative (Western Farmers), an Oklahoma utility that was a Triton coal customer. The case was tried to a jury, and the jury returned a verdict for Mobil,

* Chief Justice at time of oral argument.

effectively finding that Mobil had not interfered with Triton's contract with Western Farmers. Triton has endeavored to pique the interest of this court with suggestions of interesting substantive matters that could have resulted in a different determination by the jury. We conclude, however, that there is no justification presented for reversing the judgment entered on the jury verdict because Rule 51, W.R.C.P., controls the disposition of the claimed instructional errors, and there is no reason to apply the plain error doctrine pursuant to Rule 7.05, W.R.A.P. We affirm the judgment of the district court.

In its opening brief, Triton presents the issues on appeal in this way:

"1. Whether the trial court erred in submitting Instruction 7 to the jury, because that instruction erroneously endorsed Mobil's legally unsupportable theory that Triton's contract with WFEC ceased to exist when Triton filed an action for specific performance seeking to enforce that contract?

"2. Whether the trial court erred in refusing to submit Triton's Proposed Instruction 12 to the jury, which would have properly instructed the jury that * * * [Mobil's] own competitive interest in seeking prospective economic advantage did not constitute, as a matter of law, justification for interfering with Triton's preexisting contract rights?

"3. Whether these two erroneous rulings on jury instructions prejudiced Triton's substantial rights, because a properly instructed jury might have concluded both that Mobil's conduct was improper and that Mobil's conduct caused WFEC to breach its contract with Triton?

"4. Whether the trial court erred in denying Triton's motion for judgment notwithstanding the verdict, to alter or amend the judgment, or for new trial?"

Mobil sets forth the issues in this way:

"1. Whether Triton can base any claim of error on the giving of Instruction No.

7, when it drafted a substantial part of the instruction, consented to the instruction, and did not object to the instruction.

"2. Whether Triton can base any claim of error on the trial court's failure to give an instruction proposed by Triton but affirmatively withdrawn by Triton at the instruction conference.

"3. Whether Triton can legitimately satisfy any of the elements of the 'plain error' doctrine embodied in Wyoming Rules of Appellate Procedure 7.05.

"4. Whether Triton's failure to move for a directed verdict at the close of all the evidence precludes Triton's assigning as error the trial court's overruling of its motion for judgment n.o.v."

In resolving the case, we first dispose of the questions of proper preservation of the instructional issues on the record so that those issues can be reviewed. We then address the application of the plain error doctrine to this situation as an alternative premise for considering the claims of error.

In 1977, Triton and Western Farmers entered into a sales contract pursuant to which Triton was to supply coal from its Buckskin Mine near Gillette to Western Farmers' power plant located at Hugo, Oklahoma.[1] The contract provided that Triton would begin delivering coal to Western Farmers on October 1, 1981, and it would continue until Triton had delivered 18 million tons of coal or until the termination date of December 31, 1996. It was expected that Triton would deliver to Western Farmers approximately 1.2 million tons of coal each year. By amendment in 1982, price concessions were granted to Western Farmers in exchange for its agreement that Triton would provide all of Western Farmers' coal needs.

In July of 1984, Western Farmers notified Triton of its intention to quit purchasing Triton coal because of its inability to obtain transportation at a reasonable cost. On July 27, 1984, Triton instituted an ac-

---

**1.** Triton Coal Company, Inc. is a wholly-owned subsidiary of Shell Mining Company; Shell Mining Company is, in turn, a wholly-owned subsidiary of Shell Oil Company. Shell Oil Company, as the original developer of the Buckskin Mine, subsequently assigned all Buckskin Mine contracts to Triton.

tion in the United States District Court for the District of Wyoming in which it alleged that Western Farmers was in "total breach" of the contract, and it sought specific performance. That suit was settled by the parties in January of 1986. In the meantime, Western Farmers purchased coal from Mobil for almost a year. The settlement agreement between Western Farmers and Triton required Western Farmers to resume purchasing Triton coal and to pay Triton approximately $8.36 million which represented the difference between what Western Farmers had paid Mobil, for coal purchased from Mobil between February, 1985 and the date of settlement, and the amount that Western Farmers would have paid Triton for the same quantity of coal. Triton then resumed shipping coal to Western Farmers under modified terms of the 1977 contract, and Mobil and Western Farmers agreed to terminate their contractual relationship by the end of 1986.

Triton then brought this action against Mobil claiming tortious interference with the contract between Triton and Western Farmers.[2] Triton alleged that Mobil, knowing of the existence of its contract with Western Farmers, caused Western Farmers to breach that contract with resulting damages to Triton in excess of $8 million. The element of interference was founded on the contention that Western Farmers had stopped buying coal under its contract with Triton because it had been enticed by Mobil with considerably lower coal prices than those called for in Western Farmers' contract with Triton. Mobil's quoted price for coal was approximately $6.50 per ton while the contract price for Triton coal was between $11 and $12 per ton. The case was tried to a jury in 1989.

Prior to the time that the jury retired to deliberate, it received, among the court's instructions, Jury Instruction No. 7. The instruction read:

"A party repudiates a contract when it clearly and unequivocally announces its intention not to perform its obligations under the contract. This repudiation becomes a breach when it is so treated by the injured party. Any actions taken by Mobil after Triton treated its contract with Western Farmers as breached cannot be considered interference with that contract.

"Breach of contract is a failure, without legal excuse, to perform any part of a contract."

This instruction was developed after both parties submitted proposed instructions dealing with the subject matter.[3]

The next to the last day of trial, the trial judge and counsel for the parties worked almost six hours discussing and reworking the instructions to the jury. By agreement, the conference was not recorded. Objections to the final instructions were to be made the following day at a formal, recorded conference prior to submission of the instructions to the jury and before the closing arguments. On that occasion, Tri-

---

**2.** Triton's claim for punitive damages and Mobil's counterclaim for tortious interference by Triton with Mobil's contract with Western Farmers were disposed of by directed verdicts granted as to these claims upon motions made by the respective parties.

**3.** Triton's Proposed Instruction No. 15 read:
"A repudiation of a contract does not operate as a breach of that contract until it is treated as a breach by the injured party. The injured party has the option to either maintain an action at once for damages occasioned by such an anticipatory breach of the contract, or wait until performance is due and then sue for damages. Thus, the Western Farmers letter of July, 1987 did not operate as a breach of the contract until it was treated as a breach by Triton."
Mobil's Proposed Instruction No. O read:

"A party repudiates a contract when it clearly and unequivocally announces its intention not to perform its obligations under the contract. This repudiation becomes a breach when it is so treated by the injured party. If you find that, by the letter of July 13, 1984, Western Farmers repudiated its contract with Triton and that the action of Triton in bringing its lawsuit for breach of contract against Western Farmers on July 27, 1984 establishes that Triton treated the contract as breached, then any actions by Mobil or Western Farmers after that date are irrelevant, on the issue of whether Mobil tortiously interfered with the contract. Only those actions of Mobil or Western Farmers prior to July 27, 1984 can be considered in determining whether Mobil tortiously interfered with the contract between Triton and Western Farmers."

ton did raise objections to other instructions, but it did not object on the record to Jury Instruction No. 7. In fact, the record discloses that counsel for Triton discussed Jury Instruction No. 7 in his closing argument to the jury.

Triton also had submitted a proposed instruction to the effect that a competitive interest was not a defense to Mobil's tortious interference with an existing contract. At the formal instruction conference, Triton did object to the trial court's refusal to submit its proposed Jury Instruction No. 12 dealing with competitive interest. Immediately following that objection, however, Triton withdrew that proposed instruction without explanation. In presenting this appeal, Triton advises " * * * * this withdrawal was inadvertent, and was occasioned by miscommunication between Triton's trial counsel, one of whom was preparing for oral argument and could not attend this instruction conference."

After deliberating, the jury returned a verdict finding that Mobil did not intentionally and improperly interfere with the contract between Triton and Western Farmers. Judgment was entered on that verdict in favor of Mobil, and Triton has taken this appeal.

The record and the briefs demonstrate that Triton's theory of this case was that, beginning sometime in 1984, Mobil commenced an aggressive campaign with the purpose of inducing Western Farmers to breach its contract with Triton and buy coal from Mobil. Triton's burden at trial was to demonstrate that Mobil's actions satisfied the four elements necessary to prove tortious interference with Triton's contract with Western Farmers. In order to meet that burden, Triton was required to prove: (1) the existence of the Triton–Western Farmers contract; (2) Mobil's knowledge of the contract; (3) intentional and improper interference inducing or causing a breach; and (4) resulting damages. *First Wyoming Bank, Casper v. Mudge,* 748 P.2d 713 (Wyo.1988).[4] The trial court granted Triton a partial summary judgment to the effect that the first two elements, that is the existence of the Triton contract with Western Farmers and Mobil's knowledge of that contract, were established, and the jury was so instructed.

Mobil, defending the case, asserted the breach of the contract with Triton was entirely attributable to Western Farmers. Mobil's defense was that Western Farmers initiated the business relationship with Mobil that resulted in the purchase of Mobil coal and that Mobil's actions were entirely in response to overtures from Western Farmers.

On appeal, Triton argues vigorously that Jury Instruction No. 7 undermined its theory of the case and that the court erred in submitting that instruction to the jury. Its position is that, even though it alleged a breach of contract when it sued Western Farmers, it always treated the contract as being in full force and effect and had, in fact, sought specific performance. Triton urges that the instruction relating to repudiation was improper in light of the evidence. More specifically, Triton's argument is that this instruction permitted Mobil to argue that there was no contract for Mobil to interfere with after Triton filed suit against Western Farmers on July 27, 1984. The instruction justified Mobil's argument that its actions subsequent to that date could not constitute tortious interference with an existing contract. That contention was antithetical to Triton's position that it was attempting to achieve specific performance of the contract with Western Farmers; never treated its contract with Western Farmers terminated; and that the jury properly should have been instructed to consider Mobil's actions subsequent to

**4.** In *Toltec Watershed Improvement District v. Johnston,* 717 P.2d 808, 813 (Wyo.1986), this court, quoting *Restatement (Second) of Torts* § 766, p. 7 (1979), defined the tort of intentional interference with a contract in this way:

  " 'One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.' "

the filing of the suit against Western Farmers.

Triton contends that the misleading instruction compelled the jury to disregard the improper conduct on the part of Mobil that occurred after July 27, 1984, the time that encompassed most of Triton's claims of impropriety. It had asserted at trial that Mobil's improper conduct led to the execution of the contract between Mobil and Western Farmers in 1985. The ultimate conclusion by Triton is that this error caused the jury to determine that Mobil did nothing that was improper.

■ Judicial review of claimed error with respect to jury instructions is controlled by application of Rule 51, W.R.C.P., as it has been interpreted by Wyoming precedent. Rule 51, W.R.C.P., states in pertinent part:

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Over the years, this court has been consistent in its interpretation of Rule 51, W.R.C.P. We consider only those claims of error relating to jury instructions in those cases where proper objections were raised. *See Bigley v. Craven,* 769 P.2d 892 (Wyo. 1989); *B–T Limited v. Blakeman,* 705 P.2d 307 (Wyo.1985); *Cervelli v. Graves,* 661 P.2d 1032 (Wyo.1983); and *Danculovich v. Brown,* 593 P.2d 187 (Wyo.1979). Unless the circumstances justify a finding of plain error, we do not consider claims of error in jury instructions to which no objections were made. *See Seaton v. State of Wyoming Highway Commission, District No. 1,* 784 P.2d 197 (Wyo.1989); *Hashimoto v. Marathon Pipe Line Company,* 767 P.2d 158 (Wyo.1989); *Goggins v. Harwood,* 704 P.2d 1282 (Wyo.1985); *ABC Builders, Inc. v. Phillips,* 632 P.2d 925 (Wyo.1981); *Cox v. Vernieuw,* 604 P.2d 1353 (Wyo.1980); *Texas Gulf Sulphur Company. v. Robles,* 511 P.2d 963 (Wyo.1973); and *DeWitty v. Decker,* 383 P.2d 734 (Wyo.1963). In *Goggins,* 704 P.2d at 1289, we stated with respect to this rule:

"The spirit and purpose of the rule is designed to appraise and inform the trial court of the purpose of the instruction in order that the judge may make such corrections as he deems necessary before submitting the instructions to the jury."

■ Triton here contends that it did, in fact, object to Jury Instruction No. 7. It first endeavors to persuade the court that it "constructively" objected to the instruction in its Pretrial Memorandum as well as in statements made by counsel to the court during the instruction conference that was not recorded. Triton states in its opening brief:

"Despite the failure by Triton's counsel to restate Triton's objection to Instruction 7 for the record on June 30, the previous objections to the instruction satisfied both the letter and the purpose of Rule 51. By objecting in writing to the substance of what became Instruction 7 in its pretrial memorandum and objecting to the actual instruction during the course of the June 29 conference, counsel for Triton adequately stated the nature and grounds of its objection for the trial court."

The function of Rule 51, W.R.C.P., is well established in our law, and we will not expand it by adding a "constructive objection" based on off-the-record statements by counsel or relation back to arguments made in earlier court proceedings not directly tied to the jury instruction preparation. *See Morris v. State,* 644 P.2d 170 (Wyo.1982). Triton had the opportunity and the obligation to make its objections to undesirable or unfavorable or improper jury instructions, on the record, during the formal jury instruction conference prior to submission of the instructions to the jury. It did not do so. The burden for that failure is properly placed upon the party at trial. We refuse to shift that burden to the trial judge and, furthermore, we do not perceive it as our role to assume that burden. *Cullin v. State,* 565 P.2d 445 (Wyo. 1977). Neither is it appropriate for this court to substitute, in the exercise of hindsight, its strategic and tactical judgment for that of trial counsel. *Zabel v. State,*

765 P.2d 357 (Wyo.1988) (Thomas, J., dissenting).

■ We turn then to the contention that the trial court erred when it failed to instruct the jury that a competitive interest would not serve as a defense to Mobil's tortious interference with an existing contract. As we have noted, Triton withdrew that instruction without explanation, but Triton now urges that the withdrawal was inadvertent. In other cases, we have discussed the obligation of counsel to submit jury instructions for the trial court's consideration. For example, in *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.,* 743 P.2d 880, 885 (Wyo. 1987), citing *Texas Gulf Sulphur Company v. Robles,* 511 P.2d 963 (Wyo.1973), we said:

> " * * * Parties have not only the right but the duty to offer instructions. In the absence of submission of a proper written instruction, any claimed error is deemed to have been waived."

With respect to the failure to give Proposed Jury Instruction No. 12, Triton's withdrawal of that instruction waived any claim of error other than plain error. We do not perceive that the offering of an instruction that is withdrawn has any arguable standing sufficient to distinguish it from the failure to offer an instruction. Withdrawal of the instruction should be addressed in the same way, and we hold that withdrawal of an instruction forecloses an objection to the failure to give the instruction and amounts to a clear waiver of the right to have such an instruction given to the jury. As we did in considering the failure to object, we do not recognize "constructive preservation" of an issue for appeal.

Triton contends, however, that in any event it is entitled to present its claims under the doctrine of plain error. Plain error is recognized in Rule 7.05, W.R.A.P., which provides:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

We first defined plain error in *Hampton v. State,* 558 P.2d 504, 507 (Wyo.1977), in which we said:

> " * * * When review is sought under the plain error doctrine this Court must be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, that is, we are entitled to know the particular facts. Further, the proponent of plain error must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. If these criteria are met, the error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept procedurally expressed in Rule 49(a), W.R.Cr.P." (Citations omitted.)

In *Goggins,* 704 P.2d at 1291, citing *Westmark v. State,* 693 P.2d 220 (Wyo.1984), we applied that plain error standard, saying:

> "In order to invoke the plain-error rule, it is necessary to show
> " ' * * * (1) that the record reflects clear and unequivocally the fact complained of; (2) that the facts prove a transgression of a clear rule of law; (3) that the error affects a substantial right of the accused; and (4) that the defendant has been materially prejudiced by that violation.' "

Under our cases in which a party has failed to object to a jury instruction, the plain error doctrine is infrequently applied. For example, we said:

> " * * * But the application of the plain-error doctrine must be exercised cautiously only in exceptional circumstances and must not be applied unless its denial would seriously affect the fairness, integrity or public reputation of judicial proceedings." *Cullin,* 565 P.2d 445, 451, citing *Hays v. State,* 522 P.2d 1004 (Wyo. 1974).

Later, we expanded upon the principle behind our reluctance to apply the doctrine:

> "One important reason for invoking the plain-error doctrine when reviewing jury instructions which were not objected to

during the trial, is that jury instructions are written with the particular facts and theories of each case in mind. The judge, with the advice and assistance of the attorneys in the case, attempts to tailor the instructions so that they help the jury develop a clear understanding of how the facts are to be determined under the applicable law of the case. The problems the jury may have with the applicable law will differ from case to case and therefore the instructions appropriate to each case may also differ. In many cases, any one of several instructions may be legally correct. It is the duty of the attorneys in each case to determine which legally acceptable instruction best presents the client's case. Neither the judge, nor the appellate court, has the appropriate perspective to make such a decision. Even if they did understand the case better than the attorney presenting it, their role prohibits them from urging one instruction over another providing both are legally sound. Thus, unless an instruction can be said to have plainly caused a fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place." *Gore v. State*, 627 P.2d 1384, 1388–89 (Wyo.1981).

■ After careful analysis of the record and pertinent authority, we conclude that the submission of Jury Instruction No. 7 in this case did not result in any fundamental prejudice to Triton's rights. We are not persuaded that there was any transgression of a clear and unequivocal rule of law. Little substantive difference can be discerned between Triton's Proposed Instruction No. 15 and Jury Instruction No. 7 as it was submitted to the jury. The fact that an instruction may have been more precisely drafted or drafted in a way more favorable to a party does not warrant reversal for a new trial. Neither are we convinced that this instruction misstates the law in any substantial fashion. It is not our function to speculate as to what evidence the jury may or may not have considered in reaching its decision. Even if

we assume, for purposes of discussion, that the instruction given was inadequate, the circumstances do not justify departure from Rule 51, W.R.C.P., particularly in light of the fact that Triton argued the instruction to the jury during closing argument. Triton has failed to convince this court that Jury Instruction No. 7 satisfies the plain error test heretofore adopted by this court.

■ We reach the same conclusion with respect to Triton's Proposed Instruction No. 12, the one that was withdrawn. In that specific instance, the record is not clear and unequivocal. The failure of the trial court to submit Triton's Proposed Jury Instruction No. 12, or some comparable substitute, did not necessarily transgress any clear rule of law. We are not satisfied that Triton has carried its burden of demonstrating that, even if there were an error in failing to instruct on competitive interest, the error was prejudicial. *Pure Gas and Chemical Company v. Cook*, 526 P.2d 986 (Wyo.1974). From the argument and authority presented, we cannot discern how inclusion of that instruction would have resulted in a different verdict. *Condict*, 743 P.2d 880. We conclude that Triton has failed to substantiate any showing of plain error as to either Jury Instruction No. 7 or the failure to give its Proposed Jury Instruction No. 12.

■ We note that, in articulating its issues presented for review, Triton included a claim of error in denying its motion for judgment notwithstanding the verdict, to alter or amend the judgment, or for a new trial. This question was not further addressed in the brief submitted by Triton. Consequently, we are justified in applying to that contention our rule that the failure to present cogent argument or support a claim of error by pertinent authority justifies this court in refusing to consider that claim of error. *TZ Land & Cattle Company v. Condict*, 795 P.2d 1204 (Wyo.1990); *State Farm Mutual Automobile Insurance Company v. Wyoming Insurance Department*, 793 P.2d 1008 (Wyo.1990), and authorities cited therein.

We hold that, because Jury Instruction No. 7 was submitted without objection and because Triton's Proposed Jury Instruction No. 12 was withdrawn, there is no error in the trial court proceedings. Triton has not satisfied the standard for asserting these claims of error under the plain error doctrine, and we affirm the judgment of the trial court.