2005 WY 61

**Paul S. LANDSIEDEL, Appellant (Plaintiff),**

v.

**BUFFALO PROPERTIES, LLC., d/b/a Cross Roads Inn, a Wyoming Limited Liability Company, Appellee (Defendant).**

No. 04–166.

Supreme Court of Wyoming.

June 2, 2005.

Representing Appellant: Patrick Dixon of Crowell, Chapin & Dixon, LLC, Casper, Wyoming. Argument by Mr. Dixon.

Representing Appellee: Scott Klosterman and Jakob Z. Norman of Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Klosterman.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] Paul Landsiedel sustained injuries when he put his arm through a plate glass window as he was leaving the bar and lounge owned by Buffalo Properties, LLC d/b/a Cross Roads Inn (Buffalo Properties). He brought an action against Buffalo Properties alleging that it negligently failed to maintain the premises in a reasonably safe condition. After a three-day trial, the jury returned a verdict in favor of Buffalo Properties. Mr. Landsiedel appeals, claiming the evidence did not support the verdict and the trial court erred in failing to instruct the jury on the duty to inspect and the evidentiary effect of industry standards and building codes. We affirm.

## ISSUES

[¶ 2] Mr. Landsiedel presents the following issues:

1. Did the trial court err in failing to give plaintiff's proposed jury instruction No. 7 regarding a landowner's duty to inspect the premises to discover possible dangerous conditions?

2. Did the court err in failing to give plaintiff's proposed jury instruction No. 8 regarding building codes and industry standards as evidence of negligence?

3. Was the jury's verdict supported by substantial evidence?

Buffalo Properties states the issues as follows:

A. Whether substantial evidence existed to support the jury's verdict that Appellee was not negligent.

B. Having failed to properly object to the District Court's refusal of Plaintiff's proposed Jury Instruction Nos. 7 and 8 as required by W.R.C.P. 51(b), was it plain error for the District Court to refuse such instructions?

C. Even if Appellant had properly objected to the District Court's refusal of Plaintiff's proposed Jury Instruction Nos.

7 and 8, was it reversible error for the District Court to refuse such instructions?

## FACTS

[¶ 3] From approximately 9:00 p.m. until midnight on the evening of August 28, 1999, Mr. Landsiedel and his companion, Debbie Pickett, were having drinks at the Cross Roads Inn in Buffalo, Wyoming. Around midnight, Ms. Pickett became upset with Mr. Landsiedel and got up to leave. Mr. Landsiedel followed her and as he approached the glass doors leading to the outside, he tripped and fell into the glass door. As his right arm hit the door, the glass exploded and shattered. Mr. Landsiedel suffered an eight-centimeter full thickness laceration above his elbow severing his ulnar nerve.

[¶ 4] On September 19, 2001, Mr. Landsiedel filed his complaint against Buffalo Properties, alleging that it violated the duty of care owed to him and other business invitees by failing to secure the rug in front of the door and install tempered or laminated safety glass in the door. He claimed damages for medical expenses in excess of $16,000, past lost earnings in excess of $10,000, future lost earnings, permanent disfigurement and disability of his right arm, pain and suffering and punitive damages. After a trial from March 2 through 4, 2004, the jury returned a verdict in favor of Buffalo Properties.

## STANDARD OF REVIEW

[¶ 5] In reviewing the sufficiency of the evidence to support a jury verdict we assume the evidence in favor of the successful party is true, leave out of consideration entirely conflicting evidence presented by the unsuccessful party, and afford to the successful party every favorable inference that may be reasonably and fairly drawn from it. *Daley v. Wenzel,* 2001 WY 80, ¶ 24, 30 P.3d 547, ¶ 24 (Wyo.2001). Our review of claimed error with respect to jury instructions is controlled by W.R.C.P. 51(b), which provides as follows:

(b) *Further instructions; objections.*—At the close of the evidence or at such earlier time during the trial as the court reason-

ably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. Before the argument of the case to the jury has begun, the court shall give to the jury such instructions on the law as may be necessary.... *No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.*

(emphasis added.) Where no objection is made to the trial court's rulings on jury instructions, we review claims of error concerning the instructions for plain error.

## DISCUSSION

### 1. Sufficiency of the Evidence

[¶ 6] Mr. Landsiedel contends he presented sufficient evidence to meet his burden of proving that Buffalo Properties was negligent. He contends the jury's verdict in favor of Buffalo Properties was not supported by substantial evidence. He cites the following evidence supporting a verdict in his favor: the door was glazed with plate glass; the use of plate glass in this location was hazardous; the applicable building code required the use of safety glass in this location; safety glass was commonly used in Buffalo since the early 1970s; Buffalo Properties never inspected to ensure its glass complied with applicable building codes and industry standards; Buffalo Properties remodeled the premises in 1998 and, although a glass man was on the premises and involved in the remodel, did nothing to determine whether the glass used in the doors was adequate; and Buffalo Properties failed to replace the glass in the door Mr. Landsiedel fell through even when it replaced the glass in the adjacent door with safety glass in 1999. Given this evidence, Mr. Landsiedel contends the jury's verdict was erroneous.

[¶ 7] Buffalo Properties responds generally that under the applicable standard of review substantial evidence supported the verdict. Buffalo Properties asserts evidence

was presented showing that: the area in front of the doors was fully carpeted, not covered with loose rugs or mats; both the owner of and the head of maintenance for Cross Roads Inn inspected the premises on a daily basis; Buffalo Properties had no knowledge safety glass was required in the location of the accident; no applicable building code or standards required safety glass; and, in any event, earlier in the year safety glass in fact had been installed in the door through which Mr. Landsiedel fell.

[¶ 8] Assuming the evidence in favor of Buffalo Properties to be true, leaving out of consideration entirely conflicting evidence presented by Mr. Landsiedel, and affording Buffalo Properties' evidence every favorable inference that may be reasonably and fairly drawn from it, we hold there was sufficient evidence from which the jury could have found in favor of Buffalo Properties. On cross-examination, Mr. Landsiedel's expert testified that glass industry standards generally are directed to glass manufacturers and premises owners are not ordinarily aware of them; he could not offer any opinion about whether any particular building code applied to the Cross Roads Inn; safety glass is not used in most openings of most buildings; tempered glass does not prevent a person from being cut; and gravel size glass such as one witness testified he cleaned up after Mr. Landsiedel's accident is consistent with tempered glass breakage. Bill Nelson, who performed the glasswork at the Cross Roads Inn, testified that he replaced the glass in one of the doors with laminated safety glass a few months before Mr. Landsiedel's accident and thought it was the same door Mr. Landsiedel fell through. Rex Paulson, a registered professional engineer with thirty-two years experience in forensic engineering, testified that in his opinion no building code applied to the Cross Roads Inn when it was constructed and renovated; even if the UBC did apply, there was no requirement that safety glass be used on doors having a metal push bar like this door had; and the ANSI standards apply only if adopted by city officials and there was nothing indicating Buffalo officials had adopted them. The owner of the Cross Roads Inn testified he checked the premises for safety hazards on a daily basis

and employed a property manager who also was required to check for safety hazards. The head of maintenance testified the door Mr. Landsiedel fell through was previously broken, he called the glass company to come and fix it, and no one from the glass company talked to him about safety glass. Assuming this evidence to be true, sufficient evidence was presented from which the jury could find Mr. Landsiedel did not meet his burden of proving Buffalo Properties was negligent.

### 2. Error in Instructing the Jury

#### a. Plain Error or Prejudicial Error

[¶ 9] Mr. Landsiedel claims the district court erred in failing to fully and accurately instruct the jury when it refused to give the following instruction:

> The owner of a business has a duty to visitors to use reasonable care to prevent or correct dangerous conditions on the premises. This duty includes the duty to inspect the premises to discover possible dangerous conditions, of which the owner does not know, and to take reasonable precautions to protect users of the premises from dangers which are foreseeable from the condition or use of the property.

Mr. Landsiedel also claims the district court erred in failing to instruct the jury by not giving the following instruction:

> You may consider building codes, including the Uniform Building Code and industry standards, such as the American National Standards Institute (ANSI) on the question of negligence. Conformity to these codes is not an absolute defense to a claim based on ordinary negligence. These codes establish minimum standards of care.

[¶ 10] Buffalo Properties responds that Mr. Landsiedel failed to object to the district court's ruling on these proposed instructions as required by W.R.C.P. 51(b). Therefore, Buffalo Properties asserts, his claim concerning the instructions is reviewed for plain error.

[¶ 11] The record reflects the following events concerning the proposed instructions. Counsel for Mr. Landsiedel offered the in-

structions at the final instruction conference by reading them aloud to the district court and opposing counsel. He made no argument in support of the instructions. The district court asked Buffalo Properties whether it had any objection to the proposed duty of care instruction. Buffalo Properties responded that it did object on the basis that Wyoming has not imposed an affirmative duty to inspect on the premises owner. The district court stated:

> ... The Court is going to refuse Plaintiff's proposed instruction. It believes that Instruction Number 13 already approved by the parties will allow the Plaintiff to argue that the owner of this business premises must have acted as a reasonable person in maintaining its property.

Counsel for Mr. Landsiedel did not object or attempt to show the court why the proposed instruction was necessary to fully inform the jury concerning the applicable law.

[¶ 12] The district court then asked counsel for Buffalo Properties whether it objected to Mr. Landsiedel's instruction concerning building codes and industry standards. Counsel again objected, arguing that Wyoming has not recognized violation of building codes as evidence of negligence. The district court responded:

> ... This Court is not going to give this proposed jury instruction. It is not satisfied that Wyoming law has stated the proposition that these codes establish minimum standards of care. However, both of you will undoubtedly—and I think appropriately—be able to refer to the compliance or noncompliance of the standards that each of you presented to the jury in your closing remarks.

As with the duty to inspect instruction, counsel for Mr. Landsiedel made no objection to the ruling nor did he attempt to argue why the instruction should be given.

[¶ 13] Considering claimed error in instructing the jury, we have said:

> Over the years, this court has been consistent in its interpretation of Rule 51, W.R.C.P. We consider only those claims of error relating to jury instructions in those cases where proper objections were raised. Unless the circumstances justify a finding

of plain error, we do not consider claims of error in jury instructions to which no objections were made.

> "The spirit and purpose of the rule is designed to appraise and inform the trial court of the purpose of the instruction in order that the judge may make such corrections as he deems necessary before submitting the instructions to the jury."

*Triton Coal Co., Inc. v. Mobil Coal Producing, Inc.*, 800 P.2d 505, 510 (Wyo.1990) (citations omitted).

[¶ 14] Mr. Landsiedel argues that the spirit of the rule was satisfied here because he fully informed the district court of the legal issues implicated in the instructions through pretrial submissions, briefing and argument on pretrial motions and a lengthy discussion during the instruction conference. He points specifically to his pretrial memorandum filed five weeks before trial in which he advised the court he anticipated two contested issues of law, the first concerning the applicability of the UBC and ANSI standards and the second concerning whether Buffalo Properties had an affirmative duty to inspect its premises. He also points to his response to Buffalo Properties' motion to exclude his glass expert's opinion testimony, filed about the same time as his pretrial memorandum, in which he argued Buffalo Properties had a duty to inspect and codes and industry standards are evidence of minimum standards of care. On that basis, he asserts, "there could scarcely have been a doubt in the trial court's mind as to [his] position on these two instructions."

[¶ 15] Mr. Landsiedel's contention is strikingly similar to Triton Coal's claim that it "constructively" objected to the instruction in its pretrial memorandum and in statements made by counsel during the unrecorded instruction conference and that these previous written and unrecorded objections satisfied the letter and purpose of Rule 51. *Triton Coal*, 800 P.2d at 510. In response to this argument, we said:

> The function of Rule 51, W.R.C.P., is well established in our law, and we will not expand it by adding a "constructive objec-

tion" based on off-the-record statements by counsel or relation back to arguments made in earlier court proceedings not directly tied to the jury instruction preparation. Triton had the opportunity and the obligation to make its objections to undesirable or unfavorable or improper jury instructions, on the record, during the formal jury instruction conference prior to submission of the instructions to the jury. It did not do so. The burden for that failure is properly placed upon the party at trial.

*Id.* at 510.

[¶ 16] As in *Triton Coal,* we will not expand the meaning of Rule 51 by allowing Mr. Landsiedel to rely on his pretrial submissions, responses to pretrial motions or an unreported jury instruction conference to show that he objected to the court's ruling on the instructions. Mr. Landsiedel, like Triton Coal, had the opportunity and the obligation to make his objections to the instructions, on the record, during the formal jury instruction conference prior to submission of the instructions to the jury. Despite having the opportunity to do so, he failed not only to state any objection to the court's ruling; he likewise failed to offer reasons why the instructions were necessary. Therefore, we review his claim for plain error.

[¶ 17] Under the plain error rule, Mr. Landsiedel is required to show:

"(1) the record reflects clear and unequivocally the fact complained of; (2) the facts prove a transgression of a clear rule of law; (3) the error affects a substantial right of [Mr. Landsiedel]; and (4) [Mr. Landsiedel] has been materially prejudiced by that violation."

*Goggins v. Harwood,* 704 P.2d 1282, 1291 (Wyo.1985) (citation omitted). We begin with consideration of the district court's refusal to give Mr. Landsiedel's duty to inspect instruction.

#### b. Duty to Inspect

[¶ 18] There is no question Mr. Landsiedel offered and the district court refused the duty to inspect instruction. Therefore, the record reflects clearly and unequivocally the fact complained of and part one of the plain error rule is satisfied. The difficulty arises with the remaining parts of the plain error rule, whether: the facts prove a transgression of a clear rule of law; the error affected a substantial right of Mr. Landsiedel; and the ruling materially prejudiced him.

[¶ 19] In presenting his argument, Mr. Landsiedel acknowledges Wyoming has not previously addressed whether a landowner has a duty to inspect and urges this Court to adopt *Restatement 2d of Torts* § 343 (1965), which provides as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger of will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

He asserts the adoption of this provision would not really change Wyoming law because we recognized essentially the same duty described in *Restatement 2d* § 343 in *Rhoades v. K–Mart Corp.,* 863 P.2d 626, 629 (Wyo.1993) and *Buttrey Food Stores Division v. Coulson,* 620 P.2d 549, 552 (Wyo.1980) in which we held:

[A store owner] must use ordinary care to keep the premises in a safe condition; that is he must accept an affirmative duty to protect [visitors] against dangers known to him and against dangers which he might discover by the use of reasonable care.

Mr. Landsiedel contends on the basis of this holding that the instruction he offered was proper and the district court transgressed a clear rule of law by refusing to give it. We disagree.

[¶ 20] The instruction Mr. Landsiedel offered goes further than the rule recognized in *Rhoades* or the *Restatement* by expressly imposing a "duty to inspect"—a duty that Mr. Landsiedel concedes has never been adopted in Wyoming. A rule that has never been adopted cannot be a clear rule of law.

Therefore, the district court cannot have transgressed a clear rule of law by refusing to give it as is required in order to show plain error.

[¶ 21] Moreover, the instruction given by the court, taken from the Wyoming Civil Pattern Jury Instructions, stated as follows:

> The owner of a business must act as a reasonable person in maintaining its property in a reasonably safe condition in view of all of the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.

Based upon this instruction, counsel for Mr. Landsiedel argued in closing that Buffalo Properties' duty was set at a high threshold because of the greater likelihood of injury on premises where alcohol is served; there was a risk of very serious injury if proper precautions were not taken to install appropriate glass in the doors; the burden of avoiding the risk was small compared with the seriousness of the injury caused; and Buffalo Properties took no action to inspect to determine whether appropriate safety glass was installed in the doors. Given this argument, we are unable to see how the district court's decision to give the above instruction and refuse Mr. Landsiedel's proposed instruction affected a substantial right or materially prejudiced him. Even without the duty to inspect instruction, Mr. Landsiedel argued that Buffalo Properties had such a duty and presented evidence in support of his argument. We turn to the question of whether plain error occurred when the district court refused to give Mr. Landsiedel's instruction that the UBC and ANSI standards established a minimum standard of care.

### c.  Effect of UBC and ANSI Standards

[¶ 22] This Court has not previously held that the UBC or ANSI standards establish minimum standards of care as a matter of law. Rather, this Court has held, pursuant to *Restatement 2d of Torts* § 286 (1965), that a court *may,* under certain circumstances, adopt as the standard of conduct the requirements of a legislative or administrative enactment. *Pullman v. Outzen,* 924 P.2d 416, 418 (Wyo.1996), citing *Distad v.*

*Cubin,* 633 P.2d 167, 175 (Wyo.1981). Where such a standard is not adopted the unexcused violation of the enactment may serve as evidence of negligence. *Id.*

[¶ 23] The decision whether to adopt a legislative enactment or an administrative regulation as the standard of conduct is a discretionary one. *Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195, 1198 (Wyo.1987). We reverse a district court's ruling in that regard only upon finding an abuse of discretion. An abuse of discretion occurs when a court:

> "[A]cts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

*Berry v. State,* 2004 WY 81, ¶ 43, 93 P.3d 222, ¶ 43 (Wyo.2004) (citation omitted). We have previously recognized that courts are under no compulsion to accept a legislative or administrative enactment as defining any standard of conduct for purposes of a tort action. *Distad,* 633 P.2d at 177. We have further acknowledged that courts have tended to adopt administrative standards less frequently than those of legislative enactments. *Id.*

In considering whether to accept legislative or administrative enactments as establishing the standard of care in a particular case, we have said:

> Courts should refrain from an inflexible application of the negligence per se rule because of the impact that may have upon the traditional policy of premising liability on fault. The approach of the Restatement 2d is consistent with such restraint.... Following the Restatement 2d approach we find: (1) the standard defined by legislation or administrative rule should only be adopted when the four criteria of § 286, Restatement 2d, are met; (2) the excused violation of the legislative enactment or administrative rule is not negligence (a non-exclusive list of excused violations is encompassed in § 288A, Restatement 2d); and (3) even if the court

finds that the criteria of § 286 are met, it is not required to adopt the legislative enactment as the standard of conduct because of the permissive language of the Restatement 2d.

*Short,* 731 P.2d at 1198–99 (Wyo.1987). The four criteria referenced from *Restatement 2d* § 286, are stated as follows:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

In addition to these four criteria, there are other factors a trial court may consider in exercising its discretion to adopt or not adopt an enactment as the standard of conduct. We have said, for example,

> [a law should not be adopted as the standard of care if it] is so obscure, oblique, or irrational that it could not be said as a matter of law to provide an appropriate standard. Furthermore, that court has said that the statutory standard should not be substituted if the statute is somewhat obscure or unknown to the general public .... in order to invoke the statute or regulation as a standard the statute or regulation must prescribe or proscribe specific conduct. Using the statute or regulation as a standard is not appropriate if it sets out only a general or abstract standard of care.

*Short,* 731 P.2d at 1199 (citations omitted). Additionally, we have said it is not appropriate to use a legislative or administrative enactment as establishing the standard of care in cases in which the facts represent a conglomeration of circumstances. *Id.* Finally, we have said a request for an instruction stating that an enactment establishes the standard

of care must be supported by competent evidence. *Id.*

[¶ 24] From the record before us, we find no abuse of discretion in the district court's decision not to accept the UBC and the industry standards as defining the minimum standard of care in this case. The parties presented conflicting evidence as to whether the UBC and ANSI standards had been adopted or applied in Buffalo. Mr. Landsiedel presented testimony that the applicable code required the use of safety glass in the door through which he fell. Buffalo Properties presented testimony that no building code applied to the Cross Roads Inn when it was constructed and renovated; even if the UBC did apply, there was no requirement that safety glass be used on doors having a metal push bar like this door had; and the ANSI standards applied only if adopted by city officials and there was nothing indicating Buffalo officials had adopted them. Given the conflicting evidence presented, we are unable to conclude the district court exceeded the bounds of reason, could not reasonably conclude as it did or committed an error of law in exercising its discretion to decline to adopt the UBC and ANSI standards as establishing the standard of care.

[¶ 25] Given the discretionary nature of the decision whether to accept administrative regulations as defining the standard of conduct, the district court did not transgress a clear rule of law in refusing Mr. Landsiedel's proposed instruction concerning the UBC and industry standards. Moreover, the district court allowed Mr. Landsiedel to present evidence of the UBC and ANSI standards and argue that they had the effect of the law at the time of the injury and Buffalo Properties failed to comply with them. Thus, the district court's refusal to give the instruction did not prevent Mr. Landsiedel from arguing and presenting evidence concerning industry standards and he has not shown the court's ruling affected a substantial right or materially prejudiced him.

**CONCLUSION**

[¶ 26] Sufficient evidence supported the jury's finding that Buffalo Properties was not

negligent. Mr. Landsiedel failed to object to the district court's rulings refusing his instructions concerning the duty to inspect and the effect of the UBC and ANSI standards. Under the plain error standard, the court's rulings did not transgress a clear rule of law and Mr. Landsiedel has not shown they affected a substantial right or caused material prejudice.

[¶ 27]   Affirmed.