2006 WY 155

**Brinda FROST, Appellant (Plaintiff),**

v.

**Michael and Rita ALLRED, husband and wife, Appellees (Defendants).**

No. 06–24.

Supreme Court of Wyoming.

Dec. 15, 2006.

Representing Appellant: John C. Schumacher Law Office of John Schumacher, Riverton, Wyoming, and Mark J. White of White & White, P.C., Riverton, Wyoming. Argument by Mr. Schumacher.

Representing Appellees: Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The focus of this case is upon the question of what, if any, instructions should be given to a jury in regard to whether an alleged building code violation equates to negligence *per se.* The jury in this case, in the absence of such an instruction, returned a verdict in favor of the defendant appellees. We affirm.

## ISSUES

[¶ 2] 1. Whether the district court erred in instructing the jury that violation of a building code could be considered as evidence of negligence, rather than that such a violation was negligence *per se?*

2. Whether the district court erred in permitting the jury to determine which of two versions of the Uniform Building Code applied in this case?

## FACTS

[¶ 3] The appellant was employed by the appellees as a housekeeper. On November 20, 2001, she fell after exiting the front door of the appellees' house, breaking her ankle. She sued the appellees, alleging, *inter alia,* that the appellees had violated the building code of the City of Riverton because their front porch landing had an excessive slope. The following chronology of significant events is undisputed:

1. The City of Riverton adopted the 1979 version of the Uniform Building Code (UBC) on March 3, 1981. The 1979 version of the UBC contained no provision relating to the slope of a front porch landing.

2. The City of Riverton issued a Certificate of Occupancy for the house on October 1, 1981, indicating that the house was in compliance with the City's building ordinances.

3. The City of Riverton adopted the 1997 version of the UBC on September 1, 1998. The 1997 version of the UBC provides that a landing should not have more than a two percent slope.

4. The appellees purchased the house in October 2000, and did no remodeling that affected the slope of the front landing.

[¶ 4] The controversy presented to this Court focuses upon the jury instructions, particularly Instruction No. 20:

The parties have presented conflicting evidence concerning the application of the 1997 Uniform Building Code to the Allreds' front landing in November of 2001. It is up to you as the jury to decide whether or not the Allreds were required to comply with the 1997 Uniform Building Code. If you find the 1997 Uniform Building Code applied to the Allreds you may consider that as evidence of negligence. You should consider all of the circumstances surrounding non-compliance, including, whether the provisions of the Code were known by the general public.

Both issues arise out of this instruction—the question of whether the jury should be left to decide which version of the UBC applied to the appellees' house, and the question of whether a violation of the 1997 version, if it

applied, could be considered as evidence of negligence, or constituted negligence *per se*.

[¶ 5]  Other facts will be discussed as they relate to the issues.

## STANDARD OF REVIEW

[¶ 6]  We have stated our standard for the review of jury instructions many times, one of the recent reiterations being found in *Pauley v. Newman*, 2004 WY 76, ¶ 6, 92 P.3d 819, 821–22 (Wyo.2004):

> We review alleged jury instruction error as follows:

> "In considering the validity of instructions to a jury, we must determine whether the instructions, taken as a whole, adequately advise[d] the jury of the applicable law. *Banks v. Crowner*, 694 P.2d 101 (Wyo. 1985).  Proper instructions should be clear declarations of the pertinent law.  *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195 (Wyo.1987).  The ruling of a trial court on an instruction will not constitute reversible error unless there is a showing of prejudice, which connotes a demonstration by the complaining party that the instruction misled or confused the jury with respect to the applicable principles of law.  *DeJulio v. Foster*, 715 P.2d 182 (Wyo.1986)."

> *Ormsby v. Dana Kepner Co. of Wyo., Inc.*, 997 P.2d 465, 471 (Wyo.2000) (*quoting L.U. Sheep Co. v. Board of County Comm'rs of County of Hot Springs*, 790 P.2d 663, 672 (Wyo.1990)).  *See also Jensen v. Fremont Motors Cody, Inc.*, 2002 WY 173, ¶ 12, 58 P.3d 322, 326 (Wyo.2002).  "To measure the degree of prejudice, jury instructions are viewed in the light of the entire trial, including the allegations of the complaint, conflict in the evidence on critical issues and the arguments of counsel."  *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 832 (Wyo.1994).

[¶ 7]  We review a trial court's decision whether or not to adopt a legislative enactment or an administrative regulation as the standard of conduct under an abuse of discretion standard.  *Landsiedel v. Buffalo Prop., LLC*, 2005 WY 61, ¶ 23, 112 P.3d 610, 616 (Wyo.2005).  An abuse of discretion occurs when the trial court "acts in a manner [that] exceeds the bounds of reason under the circumstances."  *Id.*

## DISCUSSION

*Whether the district court erred in instructing the jury that violation of a building code could be considered as evidence of negligence, rather than that such a violation was negligence per se?*

[¶ 8]  Neither the term "negligence *per se*" nor the term "evidence of negligence" correctly describes the alternatives available to a trial court that has been asked to instruct a jury as to the legal effect of the breach of a statute, ordinance, or administrative agency rule in a negligence action.  Negligence, as we have said many times, consists of duty, breach, proximate cause, and resultant harm.  More precisely:

> There are four elements to a negligence cause of action:  (1) the defendant owed the plaintiff a duty to conform to a specified standard of care;  (2) the defendant breached the duty of care;  (3) the defendant's breach of the duty of care proximately caused injury to the plaintiff; and (4) the injury sustained by the plaintiff is compensable by money damages.

*Downtown Auto Parts, Inc. v. Toner*, 2004 WY 67, ¶ 8, 91 P.3d 917, 919 (Wyo.2004).

[¶ 9]  Saying that the judge's choice is between "negligence *per se* " and "evidence of negligence" is linguistically misleading mainly because the former phrase suggests that it captures all four elements of the tort.  It does not.  What a judge is really being asked to do in such situations is to decide whether to declare the legislative or administrative enactment to be the minimum standard of care as a matter of law.  *Landsiedel*, 2005 WY 61, ¶ 22, 112 P.3d at 616.  In other words, if the enactment establishes the standard of care, its breach establishes the first two elements of the cause of action.  If, however, the trial judge declines to equate the enactment with the duty of reasonable care, then breach of the enactment only becomes evidence that reasonable care was not exercised.

[¶ 10] We have been dealing with this issue for a long time. In *Bagley v. Watson,* 478 P.2d 595, 596–97 (Wyo.1971), we were asked to consider the propriety of three instructions that had been offered in the alternative in a highway-collision case. The first instruction stated that violation of a municipal speeding ordinance "is negligence." The second instruction described such a violation as creating a rebuttable presumption of negligence. The third instruction told the jury it could consider the violation as evidence of negligence. While admitting that a review of our case law revealed that the matter needed clarification, we sidestepped the question on procedural grounds. *Id.* at 597. However, in a concurring opinion in *Combined Ins. Co. v. Sinclair,* 584 P.2d 1034, 1052–53 (Wyo. 1978), Justice McClintock opined that the law of Wyoming was consistent with the second view; that is, that violation of a statute, ordinance, or administrative regulation creates a rebuttable presumption of negligence.

[¶ 11] The seminal case in our resolution of this issue came three years later. In *Distad v. Cubin,* 633 P.2d 167, 171–72 (Wyo. 1981), we began our discussion by describing the process by which a court determines the standard of care that is the first element of the tort of negligence:

> This court has said rather recently that the duty of care is a question of law to be determined by the court. *Medlock v. Van Wagner,* Wyo., 625 P.2d 207 (1981). It is a standard-fixing function which the judiciary must perform in order to give the jury a direction to decide whether a defendant's conduct in a particular case is justifiable or should be condemned and that if the conduct is found to be at variance with the standard, money is to be taken from the defendant to repair the plaintiff's damage. What are the means by which a court determines a standard of conduct? The Restatement, Torts 2d, § 285 summarizes the methodology:
>
> "The standard of conduct of a reasonable man may be
>
> "(a) established by a legislative enactment or administrative regulation which so provides, or

> "(b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or
>
> "(c) established by judicial decision, or
>
> "(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision."
>
> In the issue we are about to discuss and dispatch, we are concerned with standards of care borrowed from legislative enactments or administrative rules derived from statutory authority. It is seldom that the legislature provides specifically a standard of conduct which if violated shall entail civil liability in tort, as set out in § 285(a) of the Restatement, supra. We find our cause for concern in the case before us with relation to our standard-making function in § 285(a), supra, described in paragraph (c) of the Restatement's comments in that regard:
>
> "c. *Standard adopted from legislation.* Even where a legislative enactment contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence. The same is true of municipal ordinances and administrative regulations. See § 286 and Comments."
>
> Just how to deal with statutes, ordinances and administrative regulations as standards of duty appears to be unsettled in this jurisdiction.
>
> Appellant asserts that the jury was improperly instructed that the failure of a party to comply with a state or federal regulation is evidence of negligence. He contends that the jury should have been told that such a failure constitutes negligence per se, i.e., negligence in itself.

(Footnote omitted.)

[¶ 12] We went on in *Distad,* 633 P.2d at 173–74, to describe this Court's somewhat inconsistent approach to the concept of "statutory negligence *per se,*" and concluded that the issue had never been met and decided "head on." *Id.* at 174. We then concluded that the effect of the violation of a statute,

ordinance, or administrative regulation should be decided under the Restatement (Second) of Torts §§ 286, 287, 288, 288A, 288B, and 288C. *Id.* at 175–76. Because they are central to this discussion, we will set out in full the relevant Restatement sections discussed in *Distad:*

Section 286:

"The court *may* adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

Section 288A:

"(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.

"(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

"(a) the violation is reasonable because of the actor's incapacity;

"(b) he neither knows nor should know of the occasion for compliance;

"(c) he is unable after reasonable diligence or care to comply;

"(d) he is confronted by an emergency not due to his own misconduct;

"(e) compliance would involve a greater risk of harm to the actor or to others."

Section 288B:

"(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

"(2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct."

*Id.* at 175–176. (Emphasis added.)

[¶ 13]  We concluded our discussion of this issue in *Distad* by determining that: (1) under the Restatement approach, the trial court's decision whether to adopt an enactment as the standard of care is discretionary; and (2) application of negligence *per se* is not always appropriate, especially "[w]hen the facts represent a conglomeration of circumstances . . . ." *Id.* at 176–179.

[¶ 14]  The principles of *Distad* have been applied many times. In *Dubus v. Dresser Indus.,* 649 P.2d 198, 202–03 (Wyo.1982), we held that the plaintiff did not fall within the class of persons contemplated for protection by a traffic statute, and that, therefore, the statute did not create a standard of care for the breach of which he could complain. The following year, in *McClellan v. Tottenhoff,* 666 P.2d 408, 412–13 (Wyo.1983), *superseded by statute,* 1985 Wyo. Sess. Laws ch. 205, § 1, *as recognized in Daniels v. Carpenter,* 2003 WY 11, 62 P.3d 555 (Wyo.2003), we held that two statutes regulating the sale of alcoholic beverages were intended for the protection of the general public, and that evidence of their violation constituted only evidence of negligence, rather than negligence *per se.*

[¶ 15]  We further refined the *Distad* principles in *Short v. Spring Creek Ranch,* 731 P.2d 1195 (Wyo.1987), where the specific issue was "the refusal of the trial court to instruct the jury that violation of a statute regulating traffic constitutes negligence *per se,* and . . . that an instruction that such a violation is evidence of negligence is improper." *Id.* at 1196. After reiterating that *Distad,* rather than mandating a negligence *per se* approach, left the decision to the discretion of the trial judge as to what effect to give a statute or other enactment in regard to the standard of care in a civil action, we more fully described the benefits of an evidence of negligence standard:

What this court said in *Distad v. Cubin,* supra, is consistent with a choice which is compelled in any given case by the policy tension that exists between the so-called negligence per se and the so-called evidence of negligence rules. The thrust of

the negligence per se rule is that a legislative or administrative rule fixes a standard for all members of the community which does not require a specific interpretation by the jury, and thus certainty is promoted. The advantages of the evidence of negligence rule are perceived to be that not all statutes and rules are appropriate, and some are obsolete; it may be unrealistic to conclude that all reasonable people will blindly obey all statutes or administrative rules in all circumstances; and the law should not prevent the jury from assuming its usual and historic function of determining whether, in the light of their common experiences, the person charged with negligence failed to act as a reasonable person would act. See F. Harper, F. James and O. Gray, The Law of Torts, § 17.6 (2d ed.1986). These conflicting policy arguments prompted Professor Morris to say:

> "Often, after the duty problem is settled, a criminal proscription operates as a desirable, more exact standard that smooths up civil procedure. Nevertheless there are many situations in which substitution of the criminal proscription for the reasonably-prudent-man criterion effects substantive change—either because the particular case entails special facts or because the judgment of the legislature is misguided. Then use of the proscription will warp the policy of basing liability on fault. * * *" The Role of Criminal Statutes in Negligence Actions, 49 Columbia L.Rev. 21 at 47 (1949).

> Courts should refrain from an inflexible application of the negligence per se rule because of the impact that may have upon the traditional policy of premising liability on fault.

*Short,* 731 P.2d at 1198. Finally, we said that a statutory standard should not be substituted for the duty of reasonable care "if the statute is somewhat obscure or unknown to the general public." *Id.* at 1199. *See also Clarke v. Vandermeer,* 740 P.2d 921, 926 (Wyo.1987) (not error to refuse to give instruction on statute prohibiting drinking and driving where other instructions told jury to consider intoxication in determining evidence); *Pickle v. Bd. of County Comm'rs,* 764 P.2d 262, 266 (Wyo.1988) (violation of a subdivision statute may be evidence of negligence); and *Pullman v. Outzen,* 924 P.2d 416, 418 (Wyo.1996) (unexcused violation of legislative enactment not adopted as standard of care may be evidence of negligence, but does not constitute negligence *per se* ).

[¶ 16] In our most recent foray into this area of law, we relied heavily upon *Short, supra,* in concluding that a district court had not abused its discretion in choosing not to adopt the UBC or industry standards as the standard of care in a negligence action. *Landsiedel,* 2005 WY 61, ¶¶ 22–25, 112 P.3d at 616–17.[1] Of particular relevance to the present case is our emphasis in *Landsiedel,* in evaluating that exercise of discretion, of the fact that the parties presented conflicting evidence as to what building code, if any, was applicable at the time of the incident. *Id.,* ¶ 24, 112 P.3d at 617.

[¶ 17] Application of the Restatement to the facts of this case does not convince us that the district court abused its discretion in determining not to adopt the UBC as the standard of care, and to instruct the jury, instead, that violation of a building code could be evidence of negligence, rather than being negligence *per se.* Not only was there a dispute as to which UBC version was in effect, there was also evidence that, even if the latter version was in effect, the front landing provision would not have been well known to the public, and may or may not have been enforced against existing structures. This is exactly the type of "conglomeration of facts" that we recognized in *Distad* as a sound basis for allowing the trial judge

---

1. A similar line of cases analyze this standard-of-care issue in the context of a slip-and-fall on snow or ice. In *Pinnacle Bank v. Villa,* 2004 WY 150, ¶¶ 6–11, 100 P.3d 1287, 1289–91 (Wyo. 2004), we answered a certified question by concluding that the district court had not abused its discretion in adopting a municipal ordinance as establishing the applicable duty in regard to the removal of snow and ice from walkways. *See also Johnson v. Hawkins,* 622 P.2d 941, 943 (Wyo.1981); *Kalman v. Western Union Tel. Co.,* 390 P.2d 724, 726–27 (Wyo.1964); and *Watts v. Holmes,* 386 P.2d 718, 719 (Wyo.1963).

to exercise his discretion in the matter. *Distad,* 633 P.2d at 176–79.

*Whether the district court erred in permitting the jury to determine which of two versions of the Uniform Building Code applied in this case?*

[¶ 18] While the question of the existence of a duty generally is a question of law for the court, there are instances where that question is dependent upon a determination of certain basic facts, in which case the question of the existence of a duty is a question of fact to be determined by the jury. *Pauley,* 2004 WY 76, ¶ 11, 92 P.3d at 823. In the instant case, several issues of fact required the jury, rather than the court, to determine whether the 1979 version or the 1997 version of the UBC, or neither of them, applied under the circumstances. First, the home was built while the former code was in effect. Second, city officials disagreed as to which code might have applied at the time of the injury. And third, even if the latter code was in effect, evidence indicated that it applied to existing structures only if those structures had violations that were "dangerous to life," which is a question of fact. The district court did not err in having the jury determine these factual issues.

## CONCLUSION

[¶ 19] The district court did not err in instructing the jury that evidence of a violation of the uniform building code could be considered as evidence of negligence, and it did not err in allowing the jury to decide issues of fact in determining whether the appellees owed a duty to the appellant.

[¶ 20] Affirmed.