2009 WY 132

**WERNER ENTERPRISES, INC., a Nebraska corporation, and Cheryl R. Neal, Appellants (Defendants),**

v.

Peter D. BROPHY, by his guardian and conservator, Kate Brophy, and Kate Brophy, individually, Appellees (Plaintiffs).

Peter D. Brophy, by his guardian and conservator, Kate Brophy, and Kate Brophy, individually, Appellants (Plaintiffs),

v.

Werner Enterprises, Inc., a Nebraska corporation, and Cheryl R. Neal, Appellees (Defendants).

Nos. S–08–0271, S–08–0272.

Supreme Court of Wyoming.

Nov. 3, 2009.

Representing Appellants in Case No. 08–0271: Patrick J. Murphy, Jason A. Neville, Ryan Schwartz of Williams, Porter, Day & Neville, P.C., Casper, Wyoming; Curtis B. Buchhammer of Buchhammer & Kehl, P.C., Cheyenne, Wyoming. Argument by Mr. Murphy.

Representing Appellees in Case No. 08–0271: Gary J. Ceriani, Valeri S. Pappas of Davis & Ceriani, P.C., Denver, Colorado; L. Eric Lundgren of Lundgren Law Offices, P.C., Cheyenne, Wyoming. Argument by Mr. Ceriani.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] A jury awarded Peter and Kate Brophy damages in the amount of $18,069,257 for injuries they sustained as a result of a collision between Mr. Brophy's vehicle and a semi-truck owned by Werner Enterprises, Inc. (Werner) and being driven by Werner employee, Cheryl R. Neal. The district court entered judgment on the verdict and Werner appealed. The Brophys filed a cross-appeal.

[¶ 2] In their appeal, Werner and Ms. Neal contend the district court erred in refusing to instruct the jury concerning the statutory presumption they claim is created by Wyo. Stat. Ann. § 31–5–222(c) (LexisNexis 2009); the Brophys' counsel violated a pretrial order by questioning Ms. Neal about falsification of drivers' logs; the district court erred in allowing a life-care planner to testify concerning the cost of Mr. Brophy's future care without supporting medical testimony; the Brophys' counsel improperly questioned Werner's accident re-constructionist about

Werner's safety record and accident history; and the verdict was excessive and influenced by passion and prejudice. In their cross-appeal, the Brophys ask this Court to address two evidentiary rulings only in the event that we reverse the judgment and remand for a new trial on liability. We affirm the judgment.

## STATEMENT OF THE ISSUES

[¶ 3] In their appeal, Werner and Ms. Neal state the issues for this Court's determination as follows:

A. Did the district court commit prejudicial error when it refused to instruct the jury on the existence and effect of the statutory presumption, in Wyo. Stat. § 31–5–222(c), that Peter Brophy failed to grant the right of way to Cheryl Neal?

1. *After* trial, did the district court correctly concede that it erred in refusing to instruct on the statutory presumption?

2. When the admitted error is evaluated with the five factors this Court considers to evaluate whether the instructional error is prejudicial, do those five factors compel the conclusion there was prejudicial error?

3. Is it prejudicial error to incorrectly instruct the jury on the parties' burdens of proof?

B. Did the Brophys' counsel commit prejudicial error when he violated the district court's *in limine* order by asking appellant Cheryl Neal if falsifying a driver's log is a very serious matter?

C. Without any claim for punitive damages or for Werner Trucking's independent negligence, did the Brophys' counsel commit further prejudicial error when he asked appellants' accident reconstruction expert about Werner Trucking's "safety record" and "history of accidents?"

D. Did the district court commit prejudicial error when it allowed the Brophys' life-care planner and economist to testify to Mr. Brophy's $10.9 million to $11.9 million in future medical and attendant care expenses without any medical testimony of Mr. Brophy's (1) diagnosis, (2) prognosis, (3) necessity of future medical care, or (4) causal connection between such care and this accident?

E. Is this $18,069,257 verdict an excessive award appearing to have been given under the influence of passion, prejudice, and the prejudicial errors identified above?

In response, the Brophys rephrase the same issues.

[¶ 4] In their cross-appeal, the Brophys ask the Court to consider two evidentiary issues in the event we reverse the judgment and remand for a new trial on the liability issue: Whether the district court erred in admitting evidence of Mr. Brophy's speed before the accident and excluding evidence of changes the Wyoming Department of Transportation made to the site after the accident. Werner and Ms. Neal assert the district court properly exercised its discretion in both instances. Because we affirm the judgment, we do not address these issues.

## FACTS

[¶ 5] The accident giving rise to this case occurred at the I–25 interchange with I–80 in Cheyenne, Wyoming. At the point where Werner's semi-truck and Mr. Brophy's vehicle came into contact, there were three southbound lanes on I–25—a passing lane on the left, a through lane in the middle, and an acceleration/deceleration lane on the right for vehicles entering I–25 from I–80 or exiting I–25 onto I–80. At the time of the accident, there were two yield signs on the ramp for vehicles coming from I–80 onto southbound I–25.

[¶ 6] On July 25, 2006, Ms. Neal was driving Werner's semi-truck southbound in the through lane on I–25 approaching the I–25 interchange with I–80. At the same time Mr. Brophy was traveling westbound in his BMW on I–80. Mr. Brophy exited I–80 and proceeded around the ramp of the cloverleaf toward southbound I–25 and into the acceleration/deceleration lane to the right of the through lane in which Ms. Neal was traveling. The right front wheel of the semi-truck hit the left rear side of the BMW, causing the BMW to spin, skid backwards across the highway to the east and hit the guardrail before being broad-sided by another semi-

truck traveling in the left passing lane. Mr. Brophy suffered catastrophic injuries in the accident.

[¶ 7] On March 8, 2007, Mrs. Brophy filed a complaint in which she alleged claims against Werner and Ms. Neal on behalf of her husband for negligence and on her own behalf for loss of consortium. She also alleged a claim for vicarious liability against Werner. Werner and Ms. Neal (hereafter referred to together as simply Werner) denied the claims and asserted that Mr. Brophy's negligence caused the accident.

[¶ 8] The case was tried to a jury for seven days in June of 2008. The parties presented conflicting evidence concerning the location of the vehicles at the time they came into contact. The Brophys presented evidence showing the semi-truck caused the accident by suddenly moving over into the acceleration/deceleration lane occupied by the BMW without signaling or keeping a proper lookout for other traffic, hitting the BMW and causing it to spin across the highway where it was hit by the other semi-truck. Werner presented evidence that Mr. Brophy caused the accident by speeding up the ramp, ignoring the yield signs, crossing over into the through lane occupied by the semi-truck, and hitting the right front of the truck. The jury returned a verdict for the Brophys and awarded damages in the amounts of $15,785,257 to Mr. Brophy and $2,284,000 to Mrs. Brophy. Werner filed post-trial motions, which the district court denied. The parties appealed to this Court.

## DISCUSSION

### 1. Jury Instructions

[¶ 9] Werner contends the district court erred when it refused to give the following proposed instruction:

### DEFENDANTS' PROPOSED JURY INSTRUCTION NO. C

You are instructed that at the time of the event in question, that Wyoming's Uniform Act Regulating Traffic on Highways, at W.S. § 31–5–222(c), provided that:

The driver of a vehicle approaching a yield sign shall in obedience to the sign slow down to a speed reasonable for the existing conditions and, if required for safety to stop, shall stop ... at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After slowing or stopping, the driver shall yield the right-of-way to any vehicle in the intersection *or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.... If the driver is involved in a collision with ... a vehicle in the intersection or junction of roadways, after driving past a yield sign without stopping, the collision shall be deemed prima facie evidence of his failure to yield the right-of-way.* (emphasis added.)

[¶ 10] Werner contends the district court erred further when it gave the following instruction, which omitted the last part of § 31–5–222(c):

### INSTRUCTION NO. 5

### VIOLATION OF STATUTE AS EVIDENCE OF NEGLIGENCE

Violation of a statute is evidence of negligence. If you determine that a party violated a statute and that the violation played a substantial part in bringing about the injury or damage, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the party was at fault at the time of the occurrence. The following statutes of the State of Wyoming were in effect at the time of this accident:

. . . .

3) The driver of a vehicle approaching a yield sign shall in obedience to the sign slow down to [a] speed reasonable for the existing conditions and, if required for safety to stop, shall stop at the point nearest the intersection roadway where the driver has a view of approaching

traffic on the intersecting roadway before entering it. After slowing or stopping, the driver shall yield the right-of-way to any vehicle in the intersection. Wyo. Stat. Ann § 31–5–222(c).

4) "Intersection" means the area within which vehicles traveling upon different highways joining at any angle may come in conflict. Wyo. Stat. Ann. § 31–5–102(a)(xvii)(A).

5) "Right–of–Way" means the right of one (1) vehicle to proceed in a lawful manner in preference to another vehicle approaching under such circumstances of direction, speed, and proximity as to give rise to danger of collision unless one grants precedence to the other. Wyo. Stat. Ann. § 31–5–102(a)(xxxix).

[¶ 11] Werner contends the last part of § 31–5–222(c) contained in its proposed instruction C was critical because it created a statutory presumption that Mr. Brophy failed to yield the right of way which shifted the burden to the Brophys to prove that he did not fail to yield. The consequence of the district court's failure to give the instruction, Werner asserts, was that the jury was incorrectly instructed on the law and the burden of proof. The Brophys respond that Werner failed to object to the district court's ruling on the proposed instructions as required by W.R.C.P. 51(b); therefore, Werner waived the claim concerning instructional error absent plain error. Specifically, they assert Werner did not object to the district court's proposed instruction on the ground that the statute created a presumption which shifted the burden of proof nor did Werner offer an instruction to that effect.

[¶ 12] The record reflects the following events concerning the jury instructions. Werner offered instruction C along with its other proposed instructions prior to trial. Werner also offered instructions reciting the statutory definitions of "intersection" and "right-of-way." In addition, Werner offered an instruction defining "*prima facie* evidence" to mean "evidence that, unless rebutted, is sufficient on its face to establish a given fact relating to a party's claim or defense." Werner did not offer an instruction

concerning statutory presumptions or the burden of proof.

[¶ 13] At the instruction conference, after hearing objections from the Brophys' counsel, the district court asked Werner's counsel if he objected to any of the court's proposed instructions. Counsel responded affirmatively and objected to the court's instructions on comparative fault, causation and the burden of proof on the grounds that they did not make it clear that, in addition to proving that Werner's negligence caused the collision, the Brophys also had to prove the amount of their damages. Counsel made no other objection to the district court's burden of proof instruction. Counsel then stated as follows:

Instruction No. 5, which is the instruction dealing with violations of the statutes, in particular, Subparagraph 3, deals with the issue of yielding, and I had tendered to the court Defendant's Proposed Jury Instruction C, which was an excerpt of the applicable statute, 31–5–222, that contained information which the legislature advised if there is a collision and a yield sign, *prima facie* evidence is that the person with the yield sign is the one that essentially was at fault. I think that needs to be inserted back in here so that the legislature's full intent is provided to the jury.

Again, I would tender ... Defendant's Proposed Instruction C.

* * * I think the jury is adequately instructed on the duties to yield from Paragraph 3 if the rest of that statute were contained in there.

Counsel for Werner objected to some additional proposed instructions not at issue here and then stated: "[T]hat takes care of the objections that I have."

[¶ 14] The district court ruled that the instructions would be given as the court proposed them with the exception of one instruction not at issue on appeal. The district court then asked Werner's counsel if he wanted to offer any additional instructions. Counsel responded, "Only what I had submitted, Your Honor, five days before trial, and ... the one I'm primarily interested in is one of my proposed, C, which was the failure to yield statute that contained that last provision." The district court reiterated its ruling

that the instruction would be read to the jury as proposed.

[¶15] It is clear from the record that Werner objected to the omission from Instruction 5 of the last part of § 31-5-222 and offered an instruction in its place containing the omitted language. In its objection, Werner stated the omitted language was necessary to inform the jury the legislature intended that when a collision occurs after a yield sign the collision is *prima facie* evidence that the person with the yield sign was "essentially at fault." Werner did not argue, however, that the omitted language created a statutory presumption or changed the burden of proof. The question we must decide is whether Werner's objection was sufficient to preserve the issue it now raises on appeal, i.e., the district court erred in not instructing the jury that the last sentence of the statute created a presumption and changed the burden of proof on whether Mr. Brophy had failed to yield.

[¶16] In deciding whether the objection was sufficient, we look first to the language of Rule 51(b), which provides as follows:

(b) *Further instructions; objections.*—At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. Before the argument of the case to the jury has begun, the court shall give to the jury such instructions on the law as may be necessary.... *No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.*

(emphasis added)

[¶17] Considering claimed error in instructing the jury, we have consistently held:

We consider only those claims of error relating to jury instructions in those cases where proper objections were raised. Unless the circumstances justify a finding of plain error, we do not consider claims of error in jury instructions to which no objections were made.

*Landsiedel v. Buffalo Properties, LLC,* 2005 WY 61, ¶13, 112 P.3d 610, 614 (Wyo.2005), citing *Triton Coal Co., Inc. v. Mobil Coal Producing, Inc.,* 800 P.2d 505, 510 (Wyo. 1990).

[¶18] We have said:

The spirit and purpose of the rule is designed to appraise and inform the trial court of the purpose of the instruction in order that the judge may make such corrections as he deems necessary before submitting the instructions to the jury.

*Triton,* 800 P.2d at 510, quoting *Goggins v. Harwood,* 704 P.2d 1282, 1289 (Wyo.1985). The rule requires counsel "to inform the district court of the nature of the contended error and the specific grounds of objection, so that the court may exercise judicial discretion in reconsidering the instruction to avoid error." *Rittierodt v. State Farm Ins. Co.,* 3 P.3d 841, 843 (Wyo.2000), quoting *Davis v. Consolidated Oil & Gas, Inc.,* 802 P.2d 840, 843 (Wyo.1990). It is insufficient merely to state that the instruction is not complete or an accurate statement of the law. *Nish v. Schaefer,* 2006 WY 85, ¶18, 138 P.3d 1134, 1141 (Wyo.2006). Even when the objection is that no instruction on a point of law should be given, in which case no alternative instruction is required, the objection must distinctly set out the matter objected to, along with meaningful, explanatory objections. *Runnion v. Kitts,* 531 P.2d 1307, 1312 (Wyo.1975).

[¶19] We applied these principles in *Nish,* ¶19, 138 P.3d at 1141, to hold that the plaintiff's claim of instructional error would be reviewed only for plain error because, while he objected to the trial court's proposed instruction as an incorrect statement of the law, he did not offer an instruction correcting the claimed error. *See also Sunderman v. State Farm Fire & Casualty Co.,* 978 P.2d 1167, 1170 (Wyo.1999). In *Landsiedel,* ¶16, 112 P.3d at 615, we likewise reviewed the claim of instructional error for plain error because, although the plaintiff had brought the legal issues implicated in the instructions to the trial court's attention in pre-trial submissions and proceedings, he did

not object to the court's rulings on the instructions at the formal instruction conference or offer reasons at that time why the instructions were necessary. *See also Haderlie v. Sondgeroth,* 866 P.2d 703, 715–16 (Wyo.1993), concluding the party did not comply with Rule 51(d) by presenting a motion prior to trial asking for a particular instruction when he did not object to a contrary instruction during the instruction conference; *Triton,* 800 P.2d at 510, holding that a "constructive objection" to an instruction in a pretrial memorandum and during an unrecorded instruction conference did not satisfy Rule 51.

[¶ 20] In *Loya v. Wyo. Partners of Jackson Hole, Inc.,* 2004 WY 123, ¶ 16, 99 P.3d 972, 978–79 (Wyo.2004), we applied Rule 51(d) to decline to consider at all a claim of error involving a special verdict form when the party offered no objection in district court. We said:

> We do not think it harsh or unreasonable to require a litigant, when an opportunity is afforded during the trial, to timely bring a matter such as this to the attention of the trial court in order that it might be corrected, and failing to do this he shall not be heard here to complain.... Mr. Loya's failure to object is fatal to his appeal. A careful reading of the special verdict form would have alerted Mr. Loya to the possibility of the jury making no findings on Mr. Schuler's individual liability for breach of contract. The parties are held accountable for creating and acquiescing to an inartfully drafted jury verdict form.
>
> We are not unsympathetic to Mr. Loya's dilemma. However, the matter of waiver is grounded, among other things, on the proposition that jury trials are time-consuming and costly proceedings, and while litigants are entitled to a fair trial, they have responsibilities to assist the trial court in bringing about such a result. Mr. Loya provides us with no authority that would allow us to alter the district court's judgment, which is founded upon the jury's specific findings.
>
> . . . .

Having not properly preserved the issue before the district court, Mr. Loya is fore-closed from raising objections to the verdict form on appeal.

[¶ 21] In contrast, in *Daley v. Wenzel,* 2001 WY 80, ¶ 30, 30 P.3d 547, 555 (Wyo.2001), we reviewed a claim of instructional error even though the party claiming error on appeal had not objected in district court. We did so, however, because another party had objected to the instruction which we concluded satisfied Rule 51(b). That is, by virtue of the other party's objection, the trial court was fully informed of the nature and specific grounds of the asserted error and had the opportunity to reconsider and, if necessary, modify the instructions in order to avoid error. In *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.,* 843 P.2d 1178, 1183 (Wyo.1992), we reviewed a claim of instructional error where an oral objection was made but no alternative instruction was offered, concluding that the oral objection satisfied Rule 51(b) because it distinctly stated the objectionable matter and grounds for the objection.

[¶ 22] None of these cases involved the precise issue we are presented with here, where Werner offered its own instruction and objected to the court's proposed instruction but did not fully explain the grounds for the objection or offer alternative instructions addressing the statutory presumption and burden of proof. The case most analogous to the present one is *City of Cheyenne v. Simpson,* 787 P.2d 580 (Wyo.1990). The Simpsons sued the City for damages caused to their building by a truck bearing the City's logo. The jury instruction at issue read as follows:

> The presence of the seal or logo for the City of Cheyenne on a vehicle raises a presumption that the vehicle is owned by the City of Cheyenne, and that the driver of the vehicle is an employee of the City of Cheyenne acting within the scope of his employment. In order to rebut the presumption, the City of Cheyenne has the burden of proving that it did not own the vehicle or the driver was not an employee of the City.

*Id.* at 582. The City objected because in other cases where a similar presumption in-

struction had been given the driver's identity was known and the issue was whether he was acting as an agent of the employer. The City objected to giving the instruction where the driver was not named as a party and his identity was not known on the ground that the instruction did not accurately state the law. Finding that the City's objection amounted "to nothing more than a naked claim that the instruction [wa]s not complete or an accurate statement of the law," this Court concluded the objection did not meet the Rule 51(b) requirements. *Id.* The City asked this Court to review the instruction for plain error, arguing the district court should have instructed the jury that the City could rebut the presumption raised by the logo by showing the driver was not acting in the scope of employment, a new argument that the City conceded it had not presented to the trial court. We reviewed the issue for plain error, and found none. *Id.* at 583.

[¶ 23] As in *Simpson,* the argument Werner presents on appeal to this Court was not presented to the district court during the trial. Werner did not argue at trial, or offer an instruction stating, that the statute created a presumption that shifted the burden of proof. Consequently, the district court was not fully informed of the nature and specific grounds of the asserted error and did not have the opportunity to reconsider and, if necessary, modify the instructions in order to avoid error. Under these circumstances, the spirit and purpose behind Rule 51(b) were not met. Davis, 802 P.2d at 843. Werner's objection was not sufficient to preserve the arguments it presented later in its post-trial motion and this appeal.

■ [¶ 24] We turn to the question of whether Werner's failure to present an adequate objection in the district court is fatal to the issue, or whether we will review it for plain error. Late in his argument before this Court, Werner's appellate counsel stated

that this is a plain error issue, effectively conceding that trial counsel's objection did not preserve the statutory presumption issue and that our review is not for abuse of discretion as it would have been had a proper objection been made. Counsel's concession that this is a plain error case does not automatically entitle Werner to review. We have said:

> [A]pplication of the plain-error doctrine must be exercised cautiously only in exceptional circumstances and must not be applied unless its denial would seriously affect the fairness, integrity or public reputation of judicial proceedings.

*Triton,* 800 P.2d at 511 (citation omitted). We also have said:

> It is the duty of the attorneys in each case to determine which legally acceptable instruction best presents the client's case. Neither the judge, nor the appellate court, has the appropriate perspective to make such a decision. Even if they did understand the case better than the attorney presenting it, their role prohibits them from urging one instruction over another providing both are legally sound. Thus, unless an instruction can be said to have plainly caused a fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place.

*Id.* at 512 (citation omitted).

[¶ 25] The record is clear that Werner objected to Instruction No. 5 and offered proposed Instruction C. Thus, this is not a case, like *Loya,* ¶ 15, 99 P.3d at 978, where no objection was made and we declined to consider the issue even for plain error. However, as in *Simpson,* the argument Werner presented post trial was not presented to the district court during the trial. In accordance with this precedent, we proceed with the plain error analysis.[1]

---

1. We apply the plain error standard because a proper objection was not made. However, as discussed below in paragraph 35, we are not persuaded that the district court committed error, plain or otherwise, in declining to give the instruction. Even under the abuse of discretion standard applicable when proper objection is made we would conclude the district court's de-

cision not to give the instruction was reasonable. In light of the conflicting evidence presented and the uncertainty among courts and legal scholars as to whether juries ought to be instructed on presumptions in negligence cases where the evidence is conflicting, the district court acted reasonably in rejecting the instruction. Under ei-

[¶ 26] To establish plain error, Werner must show: the record clearly reflects the jury was not instructed concerning the last part of § 31–5–222(c); the fact that the jury was not so instructed transgressed a clear rule of law; the error affected Werner's substantial right; and the error materially prejudiced Werner. *Nish*, ¶ 18, 138 P.3d at 1141.

■ [¶ 27] Werner has met the first requirement of the plain error test—the record clearly reflects that the district court did not instruct the jury on the last part of the statute. Whether Werner can meet the second requirement for plain error is not so easily determined. In its post-trial motion and before this Court, Werner contended that the law is clear that statutes making the fact of a collision *prima facie* evidence of a failure to yield create a presumption that can be overcome only by evidence countering the presumption. Werner further contended that the law is clear that a jury must be instructed on a presumption created by a statute that uses the phrase *"prima facie* evidence." Werner cites *Hildebrand v. Chicago, B. & Q.R.R.*, 45 Wyo. 175, 17 P.2d 651 (Wyo.1933); *Worth v. Worth*, 48 Wyo. 441, 49 P.2d 649 (Wyo.1935); *O'Neal v. State*, 498 P.2d 1232 (Wyo.1972); and *Huff v. State*, 992 P.2d 1071 (Wyo.1999), as support for these assertions.

[¶ 28] In *Hildebrand*, the Court considered whether Wyo. Rev. St. § 38–236 (1931) created a statutory presumption. The statute provided that a plaintiff in an action to recover for cattle killed on a railroad company's tracks made out a *prima facie* case by proving the loss of his cattle. The Court construed the statute to mean that when the fact of injury was shown "it shall be *prima facie* evidence, or it shall be presumed as a matter of law, that the railroad company is liable, or that it has been so negligent in the performance of its duty so as to entitle the plaintiff to recover, unless such *prima facie* evidence or presumption is rebutted." *Hildebrand*, 17 P.2d at 653. The Court discussed cases from other jurisdictions in which courts considered whether juries should be instructed concerning statutory presumptions, including cases holding that

juries should not be so instructed but are to decide cases based upon the evidence. No instructional error was claimed in *Hildebrand*, however, so the Court did not reach the question. Thus, *Hildebrand* does not support Werner's contention that the law is clearly established that a jury must be instructed on a statutory presumption.

[¶ 29] In *Worth*, wife brought an alienation of affection case against her in-laws. On appeal, the Court considered whether the trial court erred in refusing to instruct the jury that the law presumed a parent's counsel to his or her son was given in good faith and the burden was on the plaintiff to prove that it was not. The Court held that the requested instruction, or the fundamental ideas contained therein, should have been given to the jury. *Worth*, 49 P.2d at 656. However, the Court reached that result only after noting that the practice of instructing juries concerning presumptions had been questioned and was considered improper in negligence cases when conflicting evidence was presented. *Id.* at 651. Additionally, the Court expressly limited its holding in *Worth* "to the exact presumption" before it and declined to decide that the failure to give the instruction required reversal. *Id.* at 655–56. Like *Hildebrand*, *Worth* does not support Werner's contention that the law is clearly established that a jury must be instructed in a negligence case concerning any statutory presumptions.

[¶ 30] *O'Neal* and *Huff* were criminal cases in which the defendants were convicted of check fraud. Those cases involved statutory language to the effect that proof that the defendant did not have an account or did not have sufficient funds in the account was *prima facie* evidence that he intended to defraud. In *O'Neal*, the Court said the statute at issue created a presumption which was rebutted, thereby losing its probative force, by evidence that the defendant had disclosed at the time she delivered the check that she did not have sufficient funds to pay it. The Court reversed the conviction because there was insufficient evidence to support a finding of intent to defraud. *O'Neal*, 498 P.2d at

ther a plain error or abuse of discretion analysis, the result would be the same.

1236. There was no discussion concerning whether the jury was or should have been instructed concerning the presumption.

[¶ 31] *Huff* similarly does not provide support for Werner's assertion. The issue there was whether a jury instruction included a permissive inference, in which case it was appropriate, or a mandatory presumption, which would have violated due process. The Court concluded the instruction contained a permissive inference because it did not tell the jury that it had to find intent to defraud from the State's evidence that the defendant failed to pay the checks after receiving notice of nonpayment; rather, the instruction told the jury it could consider the evidence of failure to pay as evidence of intent. *Huff*, 992 P.2d at 1075. Considering the permissive inference instruction along with all of the other instructions, the Court concluded the jury was properly instructed concerning the applicable law. *Id.*

[¶ 32] In addition to the above Wyoming cases, Werner also cites Christopher B. Mueller, *Instructing the Jury Upon Presumptions in Civil Cases: Comparing the Federal Rule 301 with Uniform Rule 301*, XII *Land & Water L.Rev.* 219 (1977). In particular, Werner cites to Professor Mueller's discussion of the "reformist" theory of presumptions under which the jury is instructed that it should find the presumed fact unless it believes by a preponderance of the evidence that the presumed fact is untrue. *Id.* at 220. Professor Mueller compares the "reformist" theory and the "traditional" theory, in which the jury is not instructed on a presumption when the party contesting the presumed fact produces sufficient evidence contradicting it to overcome the presumption. *Id.* Although Professor Mueller advocates for the "reformist" theory, his article reflects considerable disagreement concerning the appropriateness of instructing the jury concerning presumptions. *Id.* at 221. Rather than supporting Werner's contention that the district court transgressed a clear rule of law in failing to instruct the jury concerning any presumption created by the last sentence of § 31–5–222(c), Professor Mueller's article

demonstrates that the law relating to jury instructions on statutory presumptions is not clear. Moreover, in his article, Professor Mueller is careful to note that whether a presumption instruction will be given depends upon whether one is properly requested in accordance with Rule 51. *Id.* at 284. Nowhere does he suggest that it is error, plain or otherwise, for a trial court not to give a presumption instruction when no party has requested it.

[¶ 33] In its reply brief, Werner argues that W.R.E. 301 is dispositive of this issue.[2] The rule provides as follows:

**Rule 301. Presumptions in general in civil actions and proceedings.**

(a) *Effect.*—In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

Werner contends Rule 301 constitutes the clear rule of law necessary for a showing of plain error.

[¶ 34] Courts that have addressed the issue disagree about whether juries should be instructed on presumptions under Uniform Rule 301. *See Smith v. Angell*, 122 Idaho 25, 830 P.2d 1163, 1166 (1992), holding it was reversible error to instruct the jury that the law presumed the deceased was exercising ordinary care; *Schultz v. Ford Motor Co.*, 857 N.E.2d 977 (Ind.2006), reversing an appellate court holding that it was reversible error to give a jury instruction on a presumption; *Hanson v. Roe*, 373 N.W.2d 366, 371 (Minn.Ct.App.1985), the trial court properly concluded the jury should not be instructed on the presumption of due care; *Armstrong v. West Texas Rig Co.*, 339 S.W.2d 69, 74 (Tex.Civ.App.1960), finding no error in trial court's refusal to instruct jury regarding presumption. While Rule 301 addresses the effect of a presumption on the burden of proof, it does not establish that the district court was required on its own initiative to instruct the jury that § 31–5–222(c)

2. Although Werner did not address Rule 301 in its opening brief to this Court, it did cite the rule

to the district court in support of its post-trial motion.

created a presumption that Mr. Brophy failed to yield, thereby shifting the burden to the Brophys to prove that he did yield.[3] Not only is the law not clearly established on that issue, it also is not clear that such an instruction would have been appropriate under the particular facts of this case.

[¶ 35] The parties hotly contested before and during the trial whether the statute applied at all to this interchange where, the Brophys contended, there was no "intersection or junction of roadways" and traffic instead "merged" onto I–25. Even if the statute did apply to this interchange, the parties contested whether Mr. Brophy was required to yield to all traffic in any lane on I–25, or only traffic traveling in the acceleration/deceleration lane or signaling the intent to move into that lane. The Brophys contended, and presented evidence supporting the contention, that Mr. Brophy was not at fault because the acceleration/deceleration lane was empty when he approached it, the Werner truck was in the through lane, he acted appropriately in moving into the empty lane, Ms. Neal did not signal or otherwise indicate that she intended to change lanes and, without keeping a proper lookout, she suddenly changed lanes and hit his vehicle. The conflicting contentions and evidence presented factual questions for the jury to decide, and an instruction requiring a finding that Mr. Brophy had failed to yield because the collision occurred arguably would not have been appropriate.

[¶ 36] We previously have noted that it is easy to "become lost in the 'trees' of presumptions and shifting burdens of proof, and lose sight of the 'forest'—the sufficiency of the evidence...." *Lincoln County Bd. of Comm'rs v. Cook,* 2002 WY 23, ¶ 48, 39 P.3d 1076, 1089 (Wyo.2002). A presumption is merely a "required conclusion in the absence of explanation." *Id.,* quoting *Hillard v. Marshall,* 888 P.2d 1255, 1260 (Wyo.1995).

A presumption is not a magic elixir that imbues its holder with an exalted level of protection against an evidentiary attack. A presumption simply means that in the absence of any other evidence to the contrary, the fact presumed is conclusive. If, however, there is sufficient evidence to the contrary, then it becomes a question of weight and credibility for the trier of fact. *Id.*

[¶ 37] Had there been no evidence that Mr. Brophy exercised due care and that Ms. Neal did not, Mr. Brophy's failure to yield would have been conclusively presumed by the fact that the collision occurred. However, the Brophys presented evidence that Mr. Brophy exercised due care under the circumstances and so the question of ultimate fault for the collision was one of weight and credibility for the jury. The question was really whether there was sufficient evidence to support the verdict. *Hillard,* 888 P.2d at 1260. Assuming the evidence in favor of the Brophys to be true, leaving out of consideration conflicting evidence presented by Werner, and affording the Brophys every favorable inference that may be reasonably and fairly drawn from the evidence, *Landsiedel,* ¶ 5, 112 P.3d at 612, we conclude sufficient evidence was presented to support the verdict.

[¶ 38] Caitlin King, the passenger in the left rear seat of Mr. Brophy's vehicle, testified that she had no sense that Mr. Brophy was going too fast up the ramp as they approached I–25 and, based upon what she saw and felt, she believed he was in control of the car. She further testified that when they came off the ramp onto I–25, they were in the acceleration/deceleration lane and never left that lane. She testified she had no doubt that the Werner truck came into the lane they were in and hit them.

**3.** The only Wyoming case addressing Rule 301 is *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell,* 743 P.2d 880 (Wyo.1987), in which the jury was instructed that a rebuttable presumption exists that mail delivery occurs when it is properly addressed, stamped and mailed which presumption could be rebutted by a showing that the mail was not delivered, but that a denial of receipt did not overcome the presumption. We concluded the instruction did not accurately state the law because an uncorroborated statement of non-receipt was evidence for the jury to consider along with the presumption in deciding the factual question of whether delivery occurred. We held, however, that the error was waived because no alternative instruction was offered. Thus, *Condict* provides no assistance with the issues we are faced with here.

[¶ 39]  Enda Mangan, the passenger in the front seat of the BMW, testified they were in the furthest right lane when he heard what sounded like a truck picking up speed and trying to get into the lane behind them.  James Wilson, the driver of the semi-truck that broad-sided Mr. Brophy's car, testified that he came up behind the Werner truck in the through lane at about 55 miles per hour, it was slowing down, he did not know what it was intending to do and he pulled over into the left lane to pass it.  He did not know whether the Werner truck stayed in the through lane or not, but as he passed it the BMW was suddenly directly in front of him.

[¶ 40]  The Brophys also presented the testimony of two experts, Ronald Hensen, an accident re-constructionist, and Charles Roush, a safety consultant.  Mr. Hensen testified that based upon his review of materials concerning the collision, he concluded that the BMW was in the acceleration/deceleration lane and the Werner truck was partially in the same lane when the two collided.  He also testified that in his opinion, based upon his investigation, the Werner truck hit the BMW rather than the other way round.  Mr. Roush testified based upon his review of materials relating to the collision that Ms. Neal did not act in accordance with the standard of care of professional drivers if she remained in the through lane past the start of the deceleration lane and then suddenly, without signaling, moved into the deceleration lane just in time to make the exit.

[¶ 41]  In addition to these witnesses, testimony from Werner's own witnesses raised questions about Werner's version of events.  Wyoming Highway Patrol Trooper Jeremy Beck, who responded to and investigated the collision, testified that Ms. Neal told him at the scene that she was in the acceleration/deceleration lane when the BMW hit her.  Based in part upon Ms. Neal's statements, Trooper Beck testified that he concluded the point of impact was in the acceleration/deceleration lane and that Mr. Brophy failed to yield.  He further testified that if Ms. Neal testified at trial that she was completely in the through lane when the impact occurred, that would not be consistent with what he saw or understood her to say at the scene.  As predicted during the Trooper's testimony, Ms. Neal testified that she was in the through lane, never left that lane and was in that lane when the BMW ran into her.  She testified that at no time was she in or did she start to move into the acceleration/deceleration lane and Trooper Beck must have misunderstood her.  These conflicting versions from Werner's witnesses as to where its semi-truck was when the impact occurred created factual questions for the jury to decide.  Trooper Beck's testimony that he concluded Mr. Brophy failed to yield based in part on statements Ms. Neal denied having made left it to the jury to decide whom to believe.  From the testimony, the jury could have decided Trooper Beck's conclusions were not credible, or it could have decided that Ms. Neal had changed her story.

[¶ 42]  Trooper Beck also testified that vehicles traveling up the ramp to enter I–25 had a duty to yield to all traffic in the southbound lanes of I–25. However, responding to questions by the Brophys' counsel, he testified that if a vehicle traveling up the ramp toward I–25 had an empty acceleration/deceleration lane ahead of it and other vehicles traveling south in the through lane were not signaling the intent to move into the empty lane, then a reasonable motorist traveling up the ramp could move into the acceleration/deceleration lane.  Werner's accident reconstructionist also testified that the collision could have occurred either as described by Ms. Neal or as described by the Brophys' witnesses, depending upon "who you believe."  From this testimony, the jury reasonably could have decided that Mr. Brophy was not at fault.

[¶ 43]  Werner points out that in ruling on the post-trial motions, the district court concluded that it should have instructed the jury on the entirety of § 31–5–222(c), that the statute created a presumption and how to apply the presumption.  For the reasons discussed in the preceding paragraphs, we do not agree with that conclusion.  However, we are in agreement with the district court's conclusion that instructing the jury that the statute created a presumption likely would

not have changed the outcome. As the district court stated:

> The jury's attribution of 100% fault to defendants means that it found, necessarily, that Brophy in the facts and circumstances shown by the evidence, had no traffic to which he should yield *or* that his failure to yield did not cause the accident. Even defendants' expert, in the end, agreed that the accident could have happened either way, depending on whether one believed the driver of the truck or some of the other witnesses.

> A further point is that the presumption would be that Brophy failed to yield, *not* that his failure caused the accident. The cause was the central factual issue for the jury. It is doubtful that an instruction on the presumption would have altered the outcome, in light of all of the evidence.

[¶ 44] Reviewing the claimed instructional error for plain error, we conclude Werner has not established that the district court transgressed a clear rule of law when it declined to instruct the jury on its own initiative that § 31–5–222(c) created a statutory presumption that Mr. Brophy had failed to yield and shifted the burden to the Brophys to show that he did yield. We further conclude that under the particular facts presented in this case, such an instruction may not have been appropriate; the question of fault was a factual one for the jury to decide based upon its assessment of the evidence presented and the witness' credibility. Additionally, we conclude that the evidence was sufficient to support the jury's verdict.

### 2. Questioning Ms. Neal Concerning Falsification of Driver's Log

[¶ 45] Werner contends the Brophys' counsel committed prejudicial error when he asked Ms. Neal on cross-examination whether falsification of drivers' electronic logs was a serious matter. Werner asserts that the question violated the district court's pre-trial order prohibiting any mention of log falsification during the trial. Werner argues the question caused the jury to believe that Ms. Neal falsified her logs and there was no way for the defense or the district court to cure the resulting prejudice.

[¶ 46] The Brophys assert the question concerning the logs was not prejudicial because the jury was instructed to decide the case on the basis of the evidence and that attorney questions were not evidence and should be disregarded if they implied facts not supported by the evidence. The Brophys further contend that even if the question caused some prejudice, Werner waived the argument because it did not object or seek a cautionary instruction at the time. Finally, the Brophys assert the question was not improper.

[¶ 47] Prior to trial, Werner filed a motion seeking an order prohibiting, among other evidence, Mr. Roush, the Brophys' safety consultant, from testifying that Ms. Neal falsified her logs. After hearing argument, the district court entered an order granting the motion. At trial, on cross-examination of Ms. Neal, the following exchange occurred:

Q. You agree with me that there were federal regulations that limit the number of hours professional truck drivers can drive?

A. Absolutely.

Q. These are designed to avoid immediate fatigue and cumulative fatigue?

A. Correct.

Q. And you agree with me that at Werner you keep track of your on-duty time and off-duty time and driving time be it an electronic log?

A. That is correct, yes, sir.

Q. And am I correct that falsifying that log is a very serious matter?

A. Falsifying any log in the trucking industry is a very serious matter. Just happens to be a lot more difficult with an electronic log. I don't know of any way to do it.

Q. You can simply—

[Defense counsel]: Your Honor, I hate to interrupt. May we approach?

The Court: I'll sustain the objection. I know what it is.

[¶ 48] The first difficulty with Werner's assertions is that it does not appear from the record that the motion in limine included questions directed to or testimony elicited

from Ms. Neal. The only defense motion in limine contained in the record before this Court sought an order precluding Mr. Roush from testifying that in his opinion Ms. Neal falsified her logs. Consistent with the motion, defense counsel argued at the motion hearing that Mr. Roush's opinions concerning Ms. Neal's alleged falsification of logs should not be allowed. The order granting the motion states only that Werner's motion concerning Mr. Roush is granted.[4]

[¶ 49] Moreover, the Brophys' counsel sought to clarify the district court's ruling concerning the logs the first day of trial when he asked whether "any evidence whatsoever" about the logs was prohibited, "both on the day of the collision and in the 30 days immediately preceding." The district court responded that the 24–hour log history was admissible but the 30–day log was not. There is nothing in the record prior to trial indicating the district court intended the order to preclude any and all references to log falsification. Given that Werner did not seek preclusion of testimony concerning log falsification from witnesses other than Mr. Roush, the Brophys' counsel did not violate the court's order in his questioning of Ms. Neal.

### 3. Questioning Expert Witness About Werner's Safety Record and Accident History

[¶ 50] During cross-examination of Werner's accident reconstruction expert, the following exchange occurred:

Q. Did you as part of your investigation, sir, look into Werner's safety record the number of accidents its trucks have been involved in?

[Defense counsel]: I'm going to object, Your Honor. That's irrelevant.

The Court: Sustained.

Q. You did look up the specifications for Mr. Brophy's car, right?

A. Yes, sir.

[¶ 51] Werner contends that evidence of its safety records and prior accidents was irrelevant and inadmissible and the Brophys' counsel asked the question knowing it was improper in order to prejudice the jury against the trucking company. The Brophys respond that asking an expert witness what information he considered as part of his investigation is perfectly proper. Even if it were not proper, they assert, there was no prejudice because the question was phrased broadly, Werner promptly objected, the court sustained the objection and counsel moved on to other matters.

[¶ 52] Our review of this issue is governed by W.R.A.P. 9.04, which provides as follows:

**Rule 9.04. Harmless error.**

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court.

Werner has the burden of establishing it was prejudiced by the claimed error. *Texas Gulf Sulphur Co. v. Robles,* 511 P.2d 963, 966 (Wyo.1973).

[¶ 53] Having carefully reviewed the entire record, we conclude the question by the Brophys' counsel caused no prejudice. In the context of the entire trial, we are not persuaded the question prejudiced the jury against Werner. The Brophys are correct that counsel phrased the question broadly as an inquiry into what information the expert considered, Werner objected promptly, the court sustained the objection and counsel moved on to other matters.

### 4. Testimony Concerning Future Medical and Attendant Care Expenses

[¶ 54] Werner next contends the district court erred when it allowed the Brophys' life-care planner, Jack Dahlberg, to testify as to Mr. Brophy's future medical and attendant care damages without supporting medical testimony.[5] Werner asserts that it

---

4. Werner's motion in limine sought the preclusion of testimony by the Brophys' transportation experts on several matters. The order granted the motion except as to the experts' opinions concerning the duty to yield. The order indicat-

ed the latter testimony might be admitted depending on the other evidence presented.

5. In its statement of the issue, Werner also alleges error in the district court's ruling allowing the Brophys' economist to testify concerning Mr.

did not stipulate to, and the Brophys presented no medical evidence concerning, the permanency or expected duration of Mr. Brophy's injuries and condition. Without such evidence, Werner contends, Mr. Dahlberg's testimony lacked foundation and the verdict cannot stand.

[¶ 55] The Brophys respond that Werner conceded Mr. Brophy's injuries were serious and permanent. Even without that concession, the Brophys assert, there was substantial evidence as to the permanency of the injuries. The Brophys further assert that physician testimony was not required because Mr. Brophy's need for care was obvious; therefore, the district court properly allowed their life-care planner to testify concerning future care.

[¶ 56] Decisions to admit or reject expert testimony are entrusted to the sound discretion of the district court. *Betzle v. State,* 847 P.2d 1010, 1022 (Wyo.1993). The party challenging the ruling has the burden of proving an abuse of discretion. *Wolf v. Allen,* 2008 WY 136, ¶ 4, 196 P.3d 775, 776 (Wyo.2008). The ultimate issue is whether the district court's decision was reasonable. *Id.*

[¶ 57] There is no question Werner conceded that Mr. Brophy suffered serious injuries in the accident, including a severe brain injury that left him unable to testify at trial. There is also no question that Werner stipulated to the Brophys' medical bills, which totaled $992,557.81. The record does not reflect, however, that Werner made any express concession concerning the permanency of Mr. Brophy's injuries.

[¶ 58] In their pre-trial memorandum, the Brophys designated Mr. Dahlberg as a rehabilitation specialist to testify in accordance with the report he prepared as to Mr. Brophy's life-care needs for the rest of his life. It does not appear from the record that Werner filed any pre-trial motion to preclude or limit Mr. Dahlberg's testimony. The record likewise reflects that no objection was made at trial prior to Mr. Dahlberg's testi-

mony. Mr. Dahlberg testified that he received a master's degree in vocational rehabilitation counseling in 1977, worked for ten years as a rehabilitation counselor at a rehabilitation facility specializing in adult spinal cord and brain injuries, and had been in private practice in life-care planning, case management and consulting since the 1980s. He testified that he is a member of the Brain Injury Association and the American Congress of Rehabilitation Medicine, has written articles on the subject of life-care plans and has testified many times in state and federal courts as an expert in the field of life-care planning.

[¶ 59] Mr. Dahlberg also testified that in formulating his opinions and report, he reviewed Mr. Brophy's medical records, consulted with Mr. Brophy's neurologist and interviewed and observed the Brophys. He testified that it is customary in the course of preparing a life-care plan to rely on the evaluations, opinions and reports of other health care professionals. He testified without objection that based upon the information he obtained, he understood that Mr. Brophy sustained a severe traumatic brain injury in the collision, leaving him with significant physical and cognitive deficits. Mr. Dahlberg testified based upon the records and his observations and consultations that Mr. Brophy is "severely limited," and "cannot care for himself, cannot walk by himself, is noncommunicative." He testified that Mr. Brophy appears to attend to and understand some of what goes on around him, although the level of his understanding is unknown because he cannot speak. Mr. Dahlberg testified without objection, that Mr. Brophy is unable to get up, walk or move without assistance from others, is largely confined to his bed, a wheelchair or a recliner and is dependent on others to take care of "all of his needs from bathing, feeding, dressing, toileting, any and all needs." Mr. Dahlberg also testified without objection that generally, by roughly two years post injury, people have stabilized and benefited from rehabilitation as much they are going to and in his opinion, given the level of Mr. Brophy's injury, he

Brophy's future medical and attendant care expenses without supporting medical testimony. However, Werner presents no argument con-

cerning the economist's testimony and we decline to address the issue.

was not likely to benefit from further rehabilitation or therapy.

[¶ 60] Mr. Dahlberg went on to testify that on the basis of the information he reviewed, he prepared a life-care plan outlining Mr. Brophy's likely future needs in the areas of medication, disposable supplies, durable medical equipment, physician contacts, therapy contacts, attendant care, psychological counseling, case management and home modifications. He also estimated the cost of these items. Mr. Dahlberg testified that he included the future cost of seizure medication in his report because the neurologist had indicated Mr. Brophy would likely have seizures later in life.

[¶ 61] Werner objected to Mr. Dahlberg's testimony at this point on the grounds that it lacked foundation and was hearsay. Werner argued that Mr. Dahlberg was not a medical doctor and, while he could testify as to the medications Mr. Brophy likely would need and how much they would cost, he should not be permitted to testify as to what the neurologist said or the medical reason for the medication. The district court ruled that Mr. Dahlberg would be allowed to testify that he relied on medical reports, records and consultations in preparing his report and as to the opinions he reached about the care Mr. Brophy would require in the future. However, the district court precluded Mr. Dahlberg from testifying concerning the contents of the medical reports and statements made to him by the neurologist.

[¶ 62] Based upon the court's ruling, Mr. Dahlberg testified that in his opinion Mr. Brophy's future needs would include two anticonvulsant medications, diapers, wipes, incontinence pads, antibiotic soap, pillows for the prevention of bed sores, bed rails, a shower chair, a wheelchair and van, medical appointments, home health care, family counseling, a case manager and home modifications. Mr. Dahlberg also testified as to the cost of these items. Counsel for the Brophys sought to admit a written summary of Mr. Dahlberg's testimony and Werner objected again on the basis of foundation. The district court overruled the objection and admitted the summary. Mr. Dahlberg testified that in his opinion the estimated annual cost

of caring for Mr. Brophy would be approximately $240,000.

[¶ 63] The record reflects that much of Mr. Dahlberg's testimony was presented without objection. When Werner did object, the objection was in response to Mr. Dahlberg's testimony concerning the neurologist's statements to him about the care Mr. Brophy likely would need later in life. Werner sought a ruling from the court that Mr. Dahlberg not be allowed to testify about what the doctor said to him or what was in the records he reviewed. The district court ruled that Mr. Dahlberg could give his opinions about the care Mr. Brophy would require in the future and in doing so could testify as to what materials he considered but would not be allowed to testify as to the content of those materials. Werner now contends more broadly that it was error for the district court to allow Mr. Dahlberg to testify as to Mr. Brophy's future needs without medical testimony concerning his diagnosis, prognosis, need for future medical care and the causal connection between such care and the collision.

[¶ 64] W.R.E. 703 provides as follows:

### Rule 703. Bases of opinion testimony by experts.

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

[¶ 65] Pursuant to this rule, out-of-court statements made by a third party may be allowed for the limited purpose of showing the basis of an expert's opinion, so long as other experts in the field would reasonably rely on similar evidence. *Griswold v. State,* 994 P.2d 920, 927 (Wyo.1999). Accordingly, in *Griswold,* we upheld the district court's ruling allowing an expert witness to testify concerning statements made to him by a psychologist about sexual assault victims. We said:

Dr. Sirotnak's testimony concerning Dr. Kelly's statements about TM and AO was not offered for the truth of the matter asserted, but was relevant because it established a basis for his expert opinion that AO and TM were victims of sexual abuse. Dr. Sirotnak testified that it was routine practice for members of the multi-disciplinary team to rely on each other's information. Based on the purpose and use of the testimony, the district court did not abuse its discretion when it admitted Dr. Sirotnak's testimony into evidence.

*Id.*

[¶ 66] As in *Griswold*, Mr. Dahlberg's statements about the information he relied upon were not offered for the truth of the matter asserted, but were relevant because they established a basis for his expert opinion about the care Mr. Brophy likely would need in the future. Like the expert in *Griswold*, Mr. Dahlberg testified that it was customary in preparing a life-care plan to rely on the evaluations, opinions and reports of other health care professionals. Through this testimony, the Brophys established a proper foundation for Mr. Dahlberg's opinions and we find no abuse of discretion in the district court's ruling allowing the testimony.

[¶ 67] Our holding is consistent with that of other authorities that have addressed the issue. For example, 2–12 Damages in Tort Actions, 12.02 (Matthew Bender & Co., Inc. 2009) states:

> In order to warrant jury consideration of permanent injury the plaintiff must prove that the injury sustained has in fact resulted in disabilities which are incurable. The standard of proof employed is either that of reasonable certainty or reasonable probability, depending upon the jurisdiction. The jury may not be left to guess or speculate as to the prognosis of the plaintiff's condition. Medical testimony may be employed to prove the permanency of the plaintiff's illness or injury. Expert testimony is not required, however, unless the plaintiff's injury is subjective and the jury, as laymen, cannot infer with reasonable certainty or probability that the condition is permanent.

[¶ 68] In addition to Mr. Dahlberg's testimony, the Brophys presented other evidence from which the jury could infer with a reasonable probability that Mr. Brophy's injuries were permanent and he likely would need care for the rest of his life. The discharge summary from the Cheyenne hospital stated that Mr. Brophy had "a devastating closed head injury" which left him unable to speak or move his right hand and leg. The summary further reflected that a neurosurgeon immediately performed a craniotomy. Because Mr. Brophy also had pulmonary failure, doctors performed a tracheostomy. Mrs. Brophy testified that he underwent a spinal fusion at the C4–C5 level as well.

[¶ 69] Additionally, Mrs. Brophy testified that nearly two years after the accident, Mr. Brophy was unable to walk without assistance and used a wheelchair, had to be kept upright to prevent him from aspirating, required a feeding tube for supplemental nutrition and medications, had a suction pump to keep his right lung clear, wore diapers, and needed to be checked on every couple of hours throughout the day and night. She also testified that he was unable to dress himself, bathe, brush his teeth, go to the bathroom, or feed himself. In addition to Mrs. Brophy's testimony, the Brophys presented a video of Mr. Brophy that showed rehabilitation workers working with him to move his right leg and to eat. From the evidence presented, the jury reasonably could have inferred that Mr. Brophy's injuries were permanent.

### 5. *Excessive Verdict*

[¶ 70] Werner's final claim is that the verdict was excessive and the result of passion and prejudice. Werner contends the evidence showed only that the Brophys incurred nearly $1,000,000 in medical bills and there was no evidence to prove that future medical care would be necessary or was causally connected to the accident. Therefore, Werner asserts, the verdict must have been based upon improper evidence, passion or prejudice against Werner, stirred by the prejudicial statements of the Brophys' counsel.

[¶ 71] Many years ago, in *Valdez v. Glenn*, 79 Wyo. 53, 330 P.2d 309, 312 (Wyo. 1958), this Court was presented with a similar claim. The Court said:

[Appellant's] theme that the verdict and judgment were the result of passion and prejudice brought about by improper conduct of defendants and their attorney and illegal evidence admitted by the court is but a reiteration of the claims that questions asked by defense counsel in cross-examining plaintiff and rulings of the court respecting evidence constituted reversible error. Notwithstanding this, and the fact that we have already considered those questions, we have made a careful search of the record to ascertain if it discloses any conduct on the part of defense counsel which was calculated to arouse passions or to inspire prejudice. The result of that effort was negative. When we found the evidence properly given the jury was sufficient to sustain their verdict, we rejected any suggestion that it was motivated by passion or prejudice. A verdict and judgment adverse to a party neither indicates an improper emotional reaction on the part of a jury nor that it entertained any bias or prejudice against the unsuccessful party. It has been said, " 'Passion' means moved by feelings or emotions, or may include sympathy as a moving influence without conscious violation of duty." " 'Prejudice' includes the forming of an opinion without due knowledge or examination." [citations omitted].... The verdict in this case has not been brought within either of these definitions.

[¶ 72] As in Valdez, we have found no reversible error in the district court's rulings or the conduct of the Brophys' counsel. We also are not persuaded that passion or prejudice caused the jury's verdict. The Brophys presented substantial evidence from which the jury reasonably could have concluded that as Mr. Brophy approached I–25, the acceleration/deceleration lane was empty and the Werner truck was traveling in the through lane with no apparent intent to move into the acceleration/deceleration lane. The Brophys also presented evidence from which the jury reasonably could have concluded that Ms. Neal entered the acceleration/deceleration lane suddenly, without signaling or keeping a proper lookout, hit Mr. Brophy's vehicle and caused it to spin across the highway where it was broad-sided by another semi-truck.

[¶ 73] The jury awarded Mr. Brophy total damages of $15,785,257. It was undisputed that his medical bills totaled nearly $1,000,000. Mr. Brophy was thirty-two years old at the time of the collision. Mr. Dahlberg estimated that it would cost nearly $8,000,000 to care for Mr. Brophy over his life-time. The Brophys' economist, Dr. Patricia Pacey, testified that the Brophys had between $1,417,400 and $2,047,400 in lost income as a result of Mr. Brophy's inability to work due to his injuries. Totaling the Brophys' medical bills, costs of future care and lost income, the evidence supported a verdict of between $10,852,757 and $11,482,757.

[¶ 74] In addition to these damages, Mr. Brophy sought damages for pain and suffering, loss of enjoyment of life and disability. Over Werner's objection, the district court instructed the jury that it could award such damages in an amount that would fairly compensate Mr. Brophy. It is apparent from the figures set forth in the paragraph above that the jury awarded Mr. Brophy between $4,303,500 and $4,933,500 for pain and suffering, loss of enjoyment of life and disability. Werner claimed then, as it claims now, that no evidence was presented supporting this amount of damages because no evidence was presented showing that Mr. Brophy experienced pain and suffering at the time of trial or would experience it in the future.

[¶ 75] The amount to be assessed for damages suffered by a plaintiff as a result of personal injuries is a matter within the sound discretion of the trier of fact. *Buttrey Food Stores Division v. Coulson*, 620 P.2d 549, 555 (Wyo.1980). When there is substantial evidence to support an award, we do not disturb the findings made by the fact finder unless the award is so excessive and unreasonable as to indicate passion or prejudice on the part of the jury. *Id.* at 559; *Vivion v. Brittain*, 510 P.2d 21, 26 (Wyo. 1973).

[¶ 76] The evidence was undisputed that, among other injuries, Mr. Brophy sustained a devastating brain injury as a result of the collision. From the medical procedures, rehabilitation and other treatment he endured in the two years before trial, the jury was capable of inferring that Mr. Brophy experienced considerable pain and suffering and loss of enjoyment of life. It also was undisputed that two years later, he still was unable to walk without assistance, could speak only a few words, and could not perform even the most basic tasks of personal care. From a man whom his wife described as a workaholic who also made time to go on vacation with his family once or twice a year, enjoy sports such as soccer, curling, bike riding and tennis, do most of the day to day cooking for his family, take care of the house and yard and spend time socializing with his wife and friends and playing with his kids, Mr. Brophy became entirely dependent on others for nearly every aspect of his care, and could not effectively communicate, earn a living or do any of the things he previously did for his wife, children and himself.

[¶ 77] This Court has said:

No witness can testify as to a per diem value for pain and suffering. There is no fixed standard or formula for measurement of the exact amount that might be fixed as reasonable compensation. Pain and suffering are not dealt with as a commodity in the marketplace. The law entrusts the matter, as it does many other things, to the common sense and good judgment of the jury.

*Henman v. Klinger,* 409 P.2d 631, 634 (Wyo. 1966).

[¶ 78] This Court has also said:

The pain and suffering for which compensation may be allowed is such as is incident to the injury. The future pain to be considered is such as is incident to the duration of the injury complained of. The duration of the injury includes the future inconvenience, the loss of time and earning capacity, the impairment of the enjoyment of life, and the physical pain and mental anguish arising out of such a situation.

The future duration of a personal injury and of the suffering arising therefrom is often a question of mere opinion, based to a greater or a less extent upon speculation, and submitted to the jury upon conflicting evidence.

*Mahoney v. Pearce,* 38 Wyo. 151, 265 P. 446, 449 (Wyo.1928).

[¶ 79] Werner is correct that there was no testimony that Mr. Brophy continues to have pain. However, the matter of whether he continued to suffer was appropriately entrusted to the jury, as were the matters of his loss of enjoyment of life and disability. In the context of a claim for loss of enjoyment of life, we have said that mobility "is the right to be a normal human being." *Mariner v. Marsden,* 610 P.2d 6, 12 (Wyo. 1980). There is no question evidence was presented to support Mr. Brophy's diminished capacity to enjoy life, inability to participate in activities he previously enjoyed, deprivation of pleasure, discomfort, and inability to be the human being he was before the injury. From the evidence presented, the jury was capable of inferring that Mr. Brophy experienced considerable pain, suffering, loss of enjoyment of life and disability. We cannot say the award was so excessive and unreasonable as to indicate passion or prejudice on the part of the jury. We hold that the jury acted within the bounds of its discretion in awarding damages to Mr. Brophy.[6]

[¶ 80] Affirmed.

---

**6.** Werner makes no argument and cites no authority challenging the loss of consortium damages awarded to Mrs. Brophy. Therefore, we do not address those damages.